Caruthers, J.,
delivered the opinion of the Court.
This is an appeal in error from a conviction of manslaughter, in the Criminal Court at Clarksville.
The main question is as to the admission of the evidence of Thomas W. Wisdom, an attorney, which it is insisted was under the seal of professional confidence. The facts are thus stated by himself:
“The evening before the killing, the defendant came to his office, where witness, Johnson, Lindsey, and several other gentlemen were, and enquired for Mr. Quarles, his partner, who was the Attorney General; was told that he was absent. Stated that he wished to see him in reference to a contemplated suit against one Thurman, a railroad contractor, for whom the defendant had been at work, and with whom he stated he had an unsettled account. Witness talked to him some with regard to his *215 suit with Thurman.” Then said he had a difficulty with a man, got his finger cut, and wrested from him the •knife, which he exhibited, and witness thinks it is the same shown on the trial. “ He then asked the witness in regard to the law of self-defence — how far a party assailed could go in defending himself. The defendant was much intoxicated. Witness states that he did not regard the relation of client and attorney as existing between defendant and himself. He did not suppose the defendant knew him, or knew him to be a lawyer, but he was the partner of Quarles, the person enquired for by defendant; that both their names, on separate signs, were upon the office door. He advised him as desired.”
Objection was made to him as incompetent, but the Court overruled it.
Are these facts sufficient to establish the relation of client and attorney ? If so, a new trial must be granted, because we cannot tell what effect it may have had upon the jury, as it was a very pregnant fact occurring just the evening before the homicide. It showed that his mind was engaged on that subject, and he was desirous to know how far he could go and be safe under the law. That is the very defence set up in this case.
Sound public policy seems to have required the estabment of the rule that facts communicated by a client to his counsel, are under the seal of confidence, and cannot be disclosed in proof. It is a rule- of protection to the client, more than a privilege to the attorney. The latter is not allowed, if he would, to break this seal of secrecy and confidence. It is supposed to be necessary to the administration of justice, and the prosecution and *216 defence of rights, that the communications between clients and their attornies should he free and unembarrassed by any apprehensions of disclosure, or betrayal. The object of the rule is, that the professional intercourse between attorney and client should be protected by profound secrecy. It is not necessary to the application of this rule, as was held in some of the old cases, now overruled, that a suit should be pending or anticipated, (1 Greenl. Ev., 240, note,) nor that there should be a regular retainer or the payment of fees. 1 Greenl. on Ev., § 241. But he must be applied to for advice or aid in his professional character, and that in relation to some act past, or right, or interest in existence. The rule has no reference to cases like the one before us, where abstract legal opinions are sought and obtained on general questions of law, either civil or criminal. In such cases no facts are or need be disclosed implicating the party; and so there is nothing to conceal, of a confidential nature.
If the defendant had perpetrated an act, and applied for legal counsel and advice in relation to it, secrecy would be imposed; but where no act had been done, or if done, not disclosed, and only a general opinion on a question of law was asked, there would be no professional confidence. It would be monstrous to hold, that if counsel was asked and obtained, in reference to a contemplated crime, that the lips of the attorney would be sealed, when the fact might become important to the ends of justice in the prosecution of crime. In such a case the relation cannot be taken to exist. Public policy would forbid it. We presume the rule has never been extended so far, nor will, it be.
*217 The State, then, was entitled to this testimony, whether it was entitled to much or little force in establishing the crime upon defendant.
The defendant’s counsel also contend that the proof is insufficient to sustain the verdict. Upon weighing it carefully, we have come to a different conclusion, and concur with the jury in their opinion that the crime of manslaughter, at least, is fully made out. The commencement of the fight was not seen, but the circumstances show that the fatal stab must have been given under a state of facts that would, at the lowest, amount to the crime of which he was convicted.
The judgment will be affirmed, and the sentence, of five years imprisonment from this day, enforced.