**Mark W. BRYAN, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Jackson.

Aug. 12, 1992.

Brett B. Stein, Memphis, Richard Kirschner, M. Kay Gartrell, Washington, DC, for appellant.

Charles W. Burson, Atty. Gen., and Amy L. Tarkington, Asst. Atty. Gen., John W. Pierotti, Jr., Dist. Atty. Gen., and John Campbell, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

TIPTON, Judge.

The petitioner, Mark W. Bryan, appeals as of right from the judgment of the Shelby County Criminal Court denying him post-conviction relief from three convictions resulting from guilty pleas entered by him. The petitioner contends that the pleas were not voluntarily, knowingly and intelligently entered as required by due process under the United States Constitution. The state raises an issue dealing with the extent to which the attorney-client privilege may be invoked by the petitioner to prevent his original trial attorney from testifying as a witness at the post-conviction evidentiary hearing. We reverse the judgment and remand the case to the trial court.

On August 22, 1983, the petitioner entered guilty pleas to three felonies—(1) attempt to obtain a controlled substance by fraud and deceit, (2) receiving less than two hundred dollars worth of stolen property, and (3) carrying a dangerous weapon into an establishment licensed to sell alcoholic beverages. Pursuant to an agreement, he

received three concurrent sentences of one to five years, to be served in the Shelby County Jail.

The plea hearing was brief. The transcript shows that the state began the proceeding by reciting the charges in the indictments, stating the nature of the agreement, and giving short accounts of the facts to support each charge. The petitioner's trial attorney agreed with the state's factual accounts. At this point, the following occurred:

> THE COURT: Mr. Bryan, do you accept the guilty pleas in these three cases? It will be one to five years for receiving stolen property, one to five years for attempting to obtain a controlled substance, one to five years for carrying a dangerous weapon into an establishment licensed to sell alcoholic beverages.
>
> And all sentences will be served concurrently.
>
> Do you accept that?
>
> DEFENDANT BRYAN: Yes, sir.
>
> THE COURT: Do you give up the right to a trial by jury?
>
> DEFENDANT BRYAN: Yes, sir.
>
> THE COURT: Are you pleading guilty of your own free will?
>
> DEFENDANT BRYAN: Yes, sir.
>
> THE COURT: Do you have any complaints against your lawyer whatsoever?
>
> DEFENDANT BRYAN: No, sir.
>
> THE COURT: Alright. The Court will sentence you in each one of these cases.

The sentences were then imposed.

## I

The petitioner filed for post-conviction relief from the convictions. At the post-conviction hearing, the guilty plea hearing transcript and other documents relating to the original cases were introduced into evidence. One of the documents was a Petition for Waiver of Trial by Jury and Request for Acceptance of Plea of Guilty (Petition for Waiver) signed by the petitioner and his trial attorney and dated August 22, 1983. In part, the document provides the following:

> It has been fully explained to me and I understand that I may, if I so choose, plea NOT GUILTY to any offense charged against me, and that if I choose to plead NOT GUILTY, the Constitution guarantees and this Court will provide me the right to a speedy and public trial by Jury; the right to see and hear all witnesses against me; the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witness, in my favor; the right to have the assistance of counsel in my defense at all stages of the proceedings.

The petitioner relied upon the transcript to make his case, electing not to testify. In response, the state sought to have the petitioner's trial attorney testify. However, the petitioner and his trial attorney asserted the attorney-client privilege. The trial court honored the invocation of privilege by the petitioner and the trial attorney relative "to anything said between [the attorney] and the [petitioner] during the time of representation."

The trial court made detailed determinations in denying post-conviction relief in this case. It acknowledged that the plea transcript reflected that the convicting court had not advised the petitioner of his right against self-incrimination nor of his right to confront the witnesses against him. However, it held (1) that the pleas were voluntarily and knowingly entered under the totality of the circumstances, (2) that the petitioner failed to carry his burden of proof to show that he was prejudiced by the omission of any rights advice, and (3) that any omission in the recitation of the petitioner's rights was harmless error.

## II

The petitioner contends that his convictions are constitutionally defective because of the following omissions at the guilty plea hearing:

(1) The petitioner was not given notice of the minimum and maximum penalties relating to the charges against him.

(2) The trial court did not question the petitioner about prior plea discussions or confirm with him the accuracy of the guilty plea.

(3) The petitioner was not given notice of the nature of the charges against him.

(4) The petitioner was not advised of his right against compulsory self-incrimination nor of his right to confront his accusers.

■ Initially, we note that the petitioner relies upon the requirements regarding the taking of guilty pleas imposed upon trial courts by *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977). However, post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40–30–105. As was pointed out in *State v. Neal*, 810 S.W.2d 131 (Tenn.1991), violation of the advice litany required by *Mackey* or Tenn.R.Crim.P. 11 which is not linked to a specified constitutional right is not cognizable in a suit for post-conviction relief. *See State v. Prince*, 781 S.W.2d 846 (Tenn.1989).

■ Regarding the contentions that it is constitutionally required to advise an accused of the minimum and maximum sentences and to question the accused about the plea negotiations and confirm the accuracy of the plea, the petitioner cites only *Mackey* and *Rounsaville v. Evatt*, 733 S.W.2d 506 (Tenn.1987) in support. However, neither case raises these specific requirements to independent constitutional status. These contentions do not give rise to cognizable post-conviction issues in the context of this case.

a. *Nature of the charges.*

■ The petitioner asserts that he was never advised by the trial court of the elements of the charges against him. He claims that such a deficiency reflects that his pleas were not voluntarily, knowingly and understandingly entered.

Adequate notice of the nature of the charges is a constitutional requisite in any criminal prosecution. *State v. Byrd*, 820 S.W.2d 739, 740 (Tenn.1991); Tenn. Const.

Art. I, § 9; U.S. Const.Amend. 6. Also, in the context of a guilty plea, an accused is entitled to receive " 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.' " *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108 (1976) quoting from *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941).

However, contrary to the position implied by the petitioner's argument, there is no constitutional requirement that a trial court, in litany fashion, explain each element of every offense to which an accused is pleading guilty. In *Henderson v. Morgan, supra*, upon which the petitioner relies, the district court found that no one advised the accused that the intent to cause the death was an essential element of second degree murder, the offense to which he pled guilty. The Supreme Court affirmed the vacating of the conviction on due process principles because the accused did not have adequate notice of this essential element of the crime. A majority of the court held that due process of law requires that an accused who is pleading guilty understand the nature of the charges to which he is admitting guilt by entering pleas. However, neither the lead opinion by Justice Stevens nor the concurring opinion by Justice White imposed a strict burden upon trial courts to render on the record a detailed description of each element of an offense to a guilty pleader.

Justice Stevens stated that even if the record failed to contain an explanation of the charge by a trial court or a representation by defense counsel that the nature of the offense had been explained, "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." 426 U.S. at 647, 96 S.Ct. at 2258. Moreover, Justice Stevens stated the following:

There is no need in this case to decide whether notice of the true nature, or substance, of a charge always requires a description of every element of the of-

fense; we assume it does not. Nevertheless, intent is such a critical element of the offense of second-degree murder that notice of that element is required.

426 U.S. at 647 n. 18, 96 S.Ct. at 2258 n. 18. Likewise, Justice White thought it significant that the accused was pleading to an offense which was not charged in the indictment, noting that the elements of the offense of second degree murder were not set forth in any document which had been read to the defendant or to which he had access.

In those cases in which the indictment is read to the defendant by the court at arraignment or at the time of his plea, his plea of guilty may well be deemed a factual admission that he did what he is charged with doing so that a judgment of conviction may validly be entered against him.

426 U.S. at 649 n. 2, 96 S.Ct. at 2260 n. 2. *In accord Marshall v. Lonberger,* 459 U.S. 422, 436, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983); *Diaz v. Martin,* 718 F.2d 1372, 1377 (5th Cir.1983).

In this case, the Petition for Waiver signed by the petitioner contained the following:

I have received and read a copy of the indictment, discussed with my attorney the facts and circumstances concerning the accusation against me. My attorney has informed me as to the nature and cause of the charges against me and as to possible defenses. My attorney has further advised me as to the punishment provided by law for the crime(s) charged against me in the indictment(s)....

The elements of the attempt and dangerous weapon offenses for which the petitioner entered pleas of guilty were alleged in the indictments. As to the charge of receiving less than two hundred dollars worth of stolen property, it was not specifically alleged by indictment. However, the indictment in issue did charge receiving stolen property worth more than two hundred dollars and sufficiently detailed the elements of that offense, which differs from the offense for which the petitioner pled guilty only as to the value of the stolen property.

Also, the Petition for Waiver contains the petitioner's statement that his plea of guilty related to "the offense of Rec. Stolen Property under $200.00 as included" in the indictment.

Given the (1) allegations in the indictments, (2) the contents of the Petition for Waiver signed by the petitioner, and (3) the statement of the charges and the stipulated evidence thereon provided by the state during the guilty plea hearing, there was ample evidence from which the trial court could conclude that the petitioner had sufficient notice of the offenses. Thus, although the plea hearing transcript does not show that the trial court explained the elements of the offenses to which the petitioner was pleading, the record before us shows that the petitioner was aware of the nature of the charges to which he was entering guilty pleas.

b. *Rights against self-incrimination and to confrontation.*

■ The petitioner contends that his guilty pleas were not knowingly and intelligently entered as required by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) because the trial court did not advise him of his right against compulsory self-incrimination or his right to confrontation nor did the trial court determine that the defendant understood the consequences of his guilty pleas upon such rights.

*Boykin* holds that an accused's guilty plea must be voluntarily, knowingly, and understandingly entered before a conviction thereon can comply with due process. In *Boykin,* the Supreme Court stated that a guilty plea constituted a waiver of various rights and it indicated that it would not presume a waiver of the following federal constitutional rights from a silent record:

(1) The privilege against compulsory self-incrimination.

(2) The right to trial by a jury.

(3) The right to confront one's accusers.

The court adopted the standard which it had previously devised for waiver of the right to counsel in *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70

(1962). In *Carnley*, the Court held: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." 369 U.S. at 516, 82 S.Ct. at 890. Thus, *Boykin* placed a premium on the record showing sufficient waiver of the specified rights. Also, it is significant to note that in *Boykin*, as pointed out in Justice Harlan's dissent, the conviction was reversed even though the petitioner never alleged that his guilty pleas were involuntarily or unknowingly entered. 395 U.S. at 245, 89 S.Ct. at 1713.

The Supreme Court's emphasis on the record reflecting the waivers has resulted in decisions devising a particular procedure to follow in determining the voluntary, knowing and understanding nature of guilty pleas relative to the *Boykin* rights. In *Roddy v. Black*, 516 F.2d 1380 (6th Cir.), *cert. denied*, 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975), the Sixth Circuit interpreted *Boykin* as requiring "that a conviction based on a guilty plea be reversed unless 'the prosecution spread[s] on the record the prerequisites of a valid waiver' of the constitutional rights which a defendant surrenders by pleading guilty." *Id.* at 1383–84. Yet, it recognized that the prosecution should be entitled to show that a guilty plea was, in fact, entered voluntarily, knowingly and intelligently even if the record was deficient.

If the discussion between defendant and trial judge at the time of a plea's acceptance leaves doubt as to whether a plea was in fact voluntary and intelligent, however, a defendant is not automatically entitled to a reversal of his conviction. Rather, in that circumstance if a defendant argues in a post-conviction proceeding that his plea was entered without his consent or without an understanding of the plea's nature and consequences, *Boykin* places a burden on the State to prove the contrary. A habeas

court may not "presume a waiver of [a defendant's] federal rights from a silent record." The State must prove that the defendant's guilty plea was voluntary and intelligent, and to do so it may introduce evidence extrinsic to the transcript of the plea's acceptance.

In the face of an inadequate transcript at the time of a guilty plea's acceptance, the State must make a clear and convincing showing that the plea was in fact knowingly and understandingly entered. *Id.* at 1384.[1] [Citations omitted]. Further, the state may not rely upon a presumption of validity to satisfy its burden of persuasion. *Dunn v. Simmons*, 877 F.2d 1275, 1277 (6th Cir.1989), *cert. denied*, 494 U.S. 1061, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990).

In *State v. Neal*, 810 S.W.2d 131 (Tenn. 1991), in an opinion rendered after the trial court's ruling in this case, our Supreme Court stated as follows:

In a case where the erroneous omission is the basis for relief under a post-conviction petition, the defendant-petitioner must allege and prove the omission, and that but for the omission the guilty plea would not have been entered. If this thesis is established *prima facie*, then the burden shifts to the State to justify the error by establishing through extrinsic evidence the defendant's knowing and voluntary relinquishment of the involved constitutional protections, despite the erroneous omission. If the State can demonstrate that the error was harmless beyond a reasonable doubt, then the judgment stands. If a reasonable doubt exists at the close of the proof, then the judgment must be set aside. *See Dunn v. Simmons*, 877 F.2d 1275, 1279 (6th Cir.1989), *cert. denied*, 494 U.S. 1061, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990).

810 S.W.2d at 139–140. In *Walter K. Johnson v. State*, 834 S.W.2d 922 (Tenn. 1992), the Supreme Court clarified its above statement in *Neal* and essentially

---

1. This procedure conforms with the waiver standard in *Carnley v. Cochran, supra,* which indicated that a valid waiver of counsel may be shown by "allegation and evidence." 369 U.S. at 516, 82 S.Ct. at 890.

adopted the procedural and substantive requirements used by the Sixth Circuit. The Court stated:

The "but for" expression in [*Neal*] should not be read to impose an additional burden upon the petitioner. His burden is only to demonstrate that the plea was unknowing or involuntary. In the absence of the transcript or other evidence, his testimony alone may be sufficient for that purpose. However, if the transcript ... shows that although all the mandated advice was not given, the plea, nevertheless, was knowing and voluntary, the absence of the advice does not entitle the petitioner to relief. Nor does a showing that the court failed to determine that the pleas were knowing and voluntary if the record shows that the pleas were, in fact, knowing and voluntary. Perhaps a better statement of the rule is that mere proof that the trial court failed to give the accused the advice mandated does not establish that the plea was unknowing or involuntary, but, nothing else appearing, it does shift the burden of proof to the State. The State may then, by clear and convincing proof, establish that the plea was knowing and voluntary, in which event the plea will not be disturbed. In the absence of such showing, petitioner will be entitled to relief. However, if the transcript shows that the petitioner was aware of his constitutional rights, he is not entitled to relief on the ground that the mandated advice was not given. Also, if all the proof presented at the post-conviction hearing, including the transcript of the guilty plea hearing, shows that the petitioner was aware of his constitutional rights, he is not entitled to relief.

834 S.W.2d at 926.

In this case, the transcript of the guilty plea hearing reflects that the convicting court did not advise the petitioner of either his right against compulsory self-incrimination or his right to confront his accusers nor did it advise him of the ramifications of his pleas relative to such rights. The state concedes as much. We note, as well, that the petitioner's Petition for Waiver was silent about self-incrimination, although it did provide that he understood he had "the right to see and hear all witnesses" against him.[2]

The deficiencies reflected in the transcript of the plea hearing and the record of his three convictions leave substantial doubt as to whether or not the petitioner's guilty pleas were knowingly and intelligently made pursuant to *Boykin*. Under these circumstances, the burden shifted to the state to prove by clear and convincing evidence that the pleas were, in fact, knowingly and intelligently made. Thus, contrary to the trial court's ruling in this case, once the deficiencies were shown, there was no further burden upon the petitioner to show that the deficiencies prejudiced him. Further, given the fact that the state presented no extrinsic evidence to overcome the deficiencies in the record, it was error for the trial court, as a matter of law, to determine on the record before it that the omissions in the record were harmless.

■ Under the guidance of *Neal* and *Johnson*, we hold that the record, although sufficient to conclude that the pleas were voluntarily entered, is insufficient to support the trial court's determination that the guilty pleas were knowingly and understandingly made. However, because the trial court inappropriately limited the state in its attempt to prove the knowing and understanding nature of the petitioner's plea through extrinsic evidence, we decline to vacate the convictions.

**2.** The right to confrontation includes the right to cross-examine the witnesses against the accused. *See California v. Green*, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970). *Boykin*, though, does not require any ritual litany. *See Campbell v. Marshall*, 769 F.2d 314, 324 (6th Cir.1985), *cert. denied sub nom. Campbell v. Morris*, 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 576 (1986); *United States v. Sherman*, 474 F.2d 303, 305 (9th Cir.1973). It may be that, by acknowledging his rights to a jury trial with the assistance of counsel and to see and hear the witnesses, the petitioner was indicating in his Petition for Waiver a basic understanding of the right to confrontation, including the right to cross-examination. However, given the fact that other *Boykin* deficiencies exist in the record which require a remand, the ultimate determination of this issue is best left to the trial court after further hearing.

■ Other than evidentiary and constitutional limitations, there is no limit to what the state may seek to prove by evidence extrinsic to the record. Indeed, there is no blanket prohibition against the state even calling the petitioner as a witness to prove that the guilty pleas were, in fact, voluntarily, knowingly and understandingly entered. The petitioner's intelligence, education, previous history with the criminal justice system, including evidence of his previously being advised of the pertinent constitutional rights, and anything else which would bear on the petitioner's understanding of his rights would be relevant. The state is entitled to a fair opportunity to present such evidence.

#### c. *Attorney-client privilege.*

■ Both the petitioner and his trial attorney asserted the attorney-client privilege, with the attorney testifying:

I wanted to invoke my attorney/client privilege in this particular matter and not be required to testify as to things that were said between my client and me, not only what he told me, but what I told him.

As previously noted, the trial court relieved the trial attorney of any further responsibility to testify and ruled that the privilege applied to anything said between attorney and client during the time of representation.

The state asserts that once the petitioner put his ignorance of his rights into issue, the attorney-client privilege was waived to the extent that his trial attorney could show that the petitioner knew his rights and the ramifications of the guilty pleas thereon. The petitioner contends that the privilege was applicable. We note that he did not pursue a claim that his counsel was ineffective.

By statute and common law, Tennessee recognizes an evidentiary privilege by which an attorney may not disclose client communications. T.C.A. § 23–3–105 provides that "[n]o attorney ... shall be permitted, in giving testimony against a client, or person who consulted him professionally, to disclose any communication made to

him as such by such person, during the pendency of the suit, before or afterwards, to his injury." In *McMannus v. State*, 39 Tenn. 213 (1858), the purpose of the privilege was explained as follows:

Sound public policy seems to have required the establishment of the rule that facts communicated by a client to his counsel are under the seal of confidence, and cannot be disclosed in proof. It is a rule of protection to the client, more than a privilege to the attorney. The latter is not allowed, if he would, to break this [s]eal of secrecy and confidence. It is supposed to be necessary to the administration of justice, and the prosecution and defence of rights, that the communications between client and their attorneys should be free and unembarrassed by any apprehensions of disclosure, or betrayal. The object of the rule is, that the professional intercourse between attorney and client should be protected by profound secrecy.

39 Tenn. at 215–216. The original statute, similar in wording to T.C.A. § 23–3–105, was held to embody this common law principle. *Johnson v. Patterson*, 81 Tenn. 626, 649 (1884). Thus, the purpose of the privilege is to shelter the confidences a client shares with his or her attorney when seeking legal advice, in the interest of protecting a relationship that is a mainstay of our system of justice.

■ In the context of criminal issues, given an accused's constitutional rights against compulsory self-incrimination and to the effective assistance of counsel, the attorney-client privilege becomes tied to an accused's constitutional protections. *See Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (privilege prevents disclosure by attorney of matters to which client, alone, has Fifth Amendment protection). The courts should be solicitous in guarding against disclosure of privileged communications between client and counsel. Any real doubt about the privileged nature of the information sought by the state should be resolved in favor of the accused.

However, the privilege is not absolute nor does it encompass all communications between the client and the attorney. For the privilege to apply, the client has the burden of showing that the communications were made in the confidence of the attorney-client relationship. That is, not only must the. communication have occurred pursuant to the attorney-client relationship, it must have been made with the intention of confidentiality. *Hazlett v. Bryant*, 192 Tenn. 251, 241 S.W.2d 121, 124 (1951). An attorney may be required to testify about communications and transactions "that have no element of confidence in them." *Johnson v. Patterson, supra*, 81 Tenn. at 649. For example, the presence of a third party at the time of the communication or the client's expectation that the substance of the communication is to be disclosed to others does not bring the privilege into play. *Hazlett v. Bryant, supra*, 241 S.W.2d at 124.

■ The attorney's communications or advice to the client, although not specifically addressed in T.C.A. § 23–3–105, are necessarily included in the privilege, as indicated by *McMannus*, for the client's protection. However, the privilege would apply in this manner only to the extent that the attorney's communications to a client were specifically based upon a client's confidential communication or would otherwise, if disclosed, directly or indirectly reveal the substance or tenor of a confidential communication. *See In re Sealed Case*, 737 F.2d 94, 101–102 (D.C.Cir.1984); 8 Wigmore, *Evidence* (McNaughton Rev.1961) § 2320, pp. 628–629. For example, the privilege does not extend to communications from an attorney to a client when they contain advice solely based upon public information rather than confidential information. *See Congoleum Industries, Inc., v. G.A.F. Corp.*, 49 F.R.D. 82, 85–86 (E.D.Pa.1969), *aff'd*, 478 F.2d 1398 (3rd Cir. 1973). Similarly, if the advice rendered by the attorney was clearly not intended to relate to client confidentiality, such as advice respecting a trial date or the client's presence at trial, the privilege would not apply. *See United States v. Gray*, 876 F.2d 1411 (9th Cir.1989); *United States v.*

*Innella*, 821 F.2d 1566 (11th Cir.1987). Likewise, advice given on general questions of law, when no facts are or need be disclosed or inferred which would implicate the client, would not ordinarily be covered by the privilege. *See McMannus v. State, supra; Jackson v. State*, 155 Tenn. 371, 293 S.W. 539, 540 (1927). In this vein, the substance of an attorney's advice to a client of various aspects of the criminal trial process, including the client's constitutional rights, would not necessarily be covered by the privilege. It would depend upon the circumstances.

■ In any event, what is clear is that whether the attorney-client privilege applies to any particular communication is necessarily question, topic and case specific. *See, e.g., Johnson v. Patterson, supra*, 81 Tenn. at 649. The blanket application of the privilege by the trial court in this case was inappropriate. The state was entitled to seek the testimony of the trial attorney and have the trial court make specific determinations of the privilege depending upon the nature of the information sought by the state.

■ Even if the attorney-client privilege applies in this case, the state contends that when the petitioner asserted that his guilty pleas were not voluntarily, knowingly and understandingly entered, the privilege should be waived as to that issue. There are circumstances which call for a waiver of the privilege by the client. If the client attacks the competency of his attorney, the privilege is viewed as waived regarding the representation in issue. *See Tasby v. United States*, 504 F.2d 332 (8th Cir.1974). Also, waiver occurs any time a party testifies about purported communications between him or herself and the attorney, but seeks to prevent the opposing party's use of the attorney as a witness. *See Cooper v. United States*, 5 F.2d 824 (6th Cir.1925). Thus, a client may not use his or her version of the events, involving the attorney, as a sword while raising the privilege as a shield to prevent the attorney from being used in responding to the attack.

In *Henderson v. Heinze,* 349 F.2d 67 (9th Cir.1965), the habeas corpus petitioner was seeking to vacate his state conviction because of the use of illegally seized evidence, a claim which he had not made in the state courts. Over the petitioner's claim of attorney-client privilege, the court considered his trial attorney's affidavit which indicated that the petitioner was aware that the suppression issue was deliberately not pursued at trial, a circumstance which could result in the federal court denying him relief under *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The Ninth Circuit held that the privilege, if any existed, was waived when the petitioner made his claim for relief on the issue not previously raised.

In the usual case, only the petitioner and his counsel are possessed of knowledge concerning the "deliberate" character of the failure to raise a defense. Were we to hold that the facts in this regard may not be the legitimate subject of inquiry in a habeas corpus proceeding, no basis would exist upon which the District Court could exercise its discretion other than upon the bare assertions of the petitioner. We refuse to countenance such result.

349 F.2d at 71.

In *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975), the court held that a party asserting the attorney-client privilege has impliedly waived it through the party's own affirmative conduct where three conditions exist:

(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;

(2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and

(3) application of the privilege would have denied the opposing party access to information vital to his defense.

68 F.R.D. at 581. Normally, to allow a post-conviction petitioner to allege, in effect, his ignorance of his rights as grounds for relief while he asserts the privilege to bar disclosure by his trial attorney of information directly relating to whether or not the petitioner was aware both of the *Boykin* rights and of the ramifications thereon by the pleading guilty would make the privilege a tool for concealment of evidence which is material to the issue raised by the petitioner.

In the trial court in this case, the state argued that it expected to question the petitioner's trial attorney about what advice he gave the petitioner about his rights. Further, the state asserted that the trial attorney's testimony was all the proof the state had to offer. We view the standards in *Hearn v. Rhay, supra,* regarding implied waiver as appropriate to apply in this type of post-conviction case. To the limited extent of the issue raised by the petitioner regarding his knowledge of the relevant constitutional rights and of the consequences of his pleas thereon, an implied waiver of privilege would be appropriate upon the state's showing that the information possessed by the trial attorney was vital to its defense in the post-conviction action. A post-conviction case is not a criminal prosecution, but is a means to address a petitioner's allegations of constitutional wrongdoing in a previous convicting or sentencing process. However, once a petitioner alleges and seeks to prove constitutional error, the state should be entitled to prove the absence of such error. Fairness in the judicial process demands no less.

### III

In consideration of the foregoing and the record as a whole, the judgment of the trial court is reversed. The case is remanded to the trial court for a new hearing in conformance with this opinion.

DWYER and PEAY, JJ., concur.