IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 12, 2005

## KENNETH GAINES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-24763     Carolyn Wade Blackett, Judge**

_____

**No. W2004-01940-CCA-R3-PC - Filed September 6, 2005**

_____

The petitioner, Kenneth Gaines, appeals from the Shelby County Criminal Court's denial of post-conviction relief. Because we discern no error in the post-conviction court's proceedings and because the record supports that court's determinations, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Robert Wilson Jones, District Public Defender; and John H. Parker, II, Assistant Public Defender, for the Appellant, Kenneth Gaines.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephanie Johnson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

In this appeal, the petitioner claims that the post-conviction court erred in holding that trial counsel rendered effective assistance and that his guilty pleas were knowing and voluntary.

Pursuant to the petitioner's guilty pleas, the Shelby County Criminal Court entered judgments on February 29, 2000, convicting the petitioner of, and sentencing him for, second degree murder and two counts of especially aggravated kidnapping. He received a 25-year sentence for second degree murder to run consecutively to an aggregate 20-year sentence for especially aggravated kidnapping. The defendant filed the petition for post-conviction relief now under review on March 5, 2001. In the petition, he claimed that his convictions resulted from ineffective assistance of trial counsel. The post-conviction court appointed counsel, who amended the petition to add a claim that the defendant's plea was involuntary or unknowing. The court conducted an

evidentiary hearing and afterward entered in writing its findings of fact, conclusions of law, and adjudication of denial of relief.

In the evidentiary hearing, the petitioner testified that he was charged along with 14 co-defendants in a gang-type abduction and homicide. Several of the co-defendants were put on trial and convicted before the parties disposed of the petitioner's case. The petitioner testified that the state's plea offer was for an aggregate sentence of 45 years and that he believed his release eligibility date would occur after the service of 70 percent of the sentence. He testified that he was dismayed to learn that his sentence carried no release eligibility date.

The petitioner testified that he believed that he could not receive a fair trial because he was "[y]oung, black, [and] affiliated [with a gang]." He testified that his trial counsel told him that if he went to trial, he would likely receive two concurrent life sentences without the possibility of parole to be served consecutively to a term of 50 years. The petitioner thought that the state's plea offer of 45 years served at 70 percent would be his best option.

The petitioner testified that trial counsel failed to obtain an expert to challenge the state's evidence, particularly the gun used to kill one of the victims. He complained that counsel failed to interview witnesses. He testified that at the time of the plea, he thought, "I'm signing for eighty-five percent so I'll get good time in the penitentiary by working . . . ." He testified that he believed the net effect of reductions to his sentence would avail him release after serving 70 percent of his sentence. He testified that trial counsel told him he would be eligible for release upon serving 85 percent of the sentence. He testified that he believed his plea agreement "was the best deal at the time" but that he later learned that he "shouldn't [have given up his] rights because [he] was . . . young and didn't know no better then, didn't know nothing about no law."

The petitioner admitted that his trial counsel conferred with him and provided him with copies of documents filed in the case. He complained, however, that he had given counsel a list of questions to ask at trial and that counsel "changed them around" and "put [them] like in his own words." He opined that trial counsel "could have presented the case . . . better, show[n] interest in my case, investigated my case better, more thoroughly." Still, the petitioner testified, "I feel that he was – he was giving me his best advice with being able to . . . get a chance to see the streets again one day at the time."

The petitioner testified that he believed he was convicted solely upon his "affiliation" with the Gangster Disciples. He also claimed that because he had resigned from the Gangster Disciples while his trial was pending, he felt threatened by gang members and by the news that a co-defendant had been stabbed in the penitentiary. He testified that he did not receive the beneficent plea offer that his co-defendants received.

On cross-examination, the petitioner admitted that trial counsel visited him in the jail, provided him with copies of the state's responses to discovery requests, and discussed with him "different options" for defending the charges. He further acknowledged that he gave counsel only

the names of people who could serve as character witnesses; he proposed no "fact" witnesses. He admitted that counsel was aware of the expected testimony from prosecution witnesses. He admitted that he answered affirmatively to the trial judge's questions about whether his guilty plea and his waiver of trial rights were voluntary. When asked about several passages in the guilty plea hearing transcript that referred to 100 percent of service of the proposed sentence, the petitioner testified that he did not hear the references because he was not listening. The petitioner admitted that he pleaded guilty on the first day scheduled for trial and that his counsel was ready for trial at that time.

Trial counsel testified that all of the co-defendants who were tried before the petitioner's trial date were convicted. Counsel represented the petitioner in the preliminary hearing and through the guilty plea. The victim who survived the co-defendants' attack testified at the preliminary hearing. When the petitioner's case went to criminal court, counsel obtained discovery materials from the state, and the trial court appointed an investigator to assist him in preparing a defense. Copies of the documents garnered by the defense were given to the petitioner, and the petitioner signed a receipt for them. These materials included a transcript of the petitioner's preliminary hearing and transcripts of previous trials of some of the co-defendants. Counsel testified that he also gave the petitioner copies of statements of prosecution witnesses and of co-defendants in the case. Counsel testified that he made 17 trips to the jail to visit the petitioner, and the investigator visited the petitioner at the jail two or three times. Counsel also met with the petitioner at the courthouse when hearings or appearances were set. Counsel recalled that, in each meeting with the petitioner, he "updated him as to the progress of the investigator and the information that [counsel] had . . . received from the [s]tate."

Counsel testified that he was prepared to go to trial on the scheduled date. Concerning the issue of the petitioner's gang involvement, counsel testified that the defense investigator interviewed the defendant's proposed character witnesses. Although counsel was prepared to call character witnesses, he expressed concern to the petitioner that the tactic would "open the door for the [s]tate to put on bad character proof, and there were some things on his record that would not have otherwise come into the trial but for the door being open." Counsel testified that the petitioner provided the names of no witnesses other than potential character witnesses.

Counsel testified that prior to the trial date, the state's only offer called for a life sentence with the possibility of parole. Counsel advised the petitioner that such a sentence would entail serving 51 years before being eligible for parole. On the day of trial, the two co-defendants who were going to trial with the petitioner pleaded guilty. Counsel and the prosecutor engaged in plea bargaining, resulting in the state's offer to accept an aggregate sentence of 45 years, which counsel relayed to the petitioner. Counsel testified that he explained to the petitioner that because the proposed conviction offenses of second degree murder and especially aggravated kidnapping are violent offenses, he would be required to served 100 percent of the aggregate sentence. Counsel emphatically opined that the petitioner "went in understanding" the 100 percent feature of the sentence. Counsel testified that, before pleading, the petitioner discussed the plea proposal with his grandmother and decided to accept the offer. In the evidentiary hearing, counsel introduced copies of the plea documents, which reflected that 100 percent of the sentence must be served in

confinement. Counsel testified that he reviewed the plea petition and waiver with the petitioner "verbatim, read it line by line, asked him did he understand each paragraph." Counsel said that he reviewed the filled-out judgment forms with the petitioner in the same manner. Counsel pointed out that the judgments included provisions for the 100 percent service of the sentences. Counsel opined that the petitioner fully understood the details of the plea agreement.

On cross-examination, counsel testified that he was familiar with the expected testimony of prosecution witnesses because he had represented the petitioner in his preliminary hearing and either he or the investigator attended the trials of co-defendants. Counsel stated that the investigator followed up on inconsistencies in witnesses' testimony as revealed in the series of court proceedings.

Counsel acknowledged that throughout the pendency of the proceedings the petitioner was concerned about reprisals from the Gangster Disciples. Counsel recounted that, after the plea was submitted and accepted, the petitioner told him about an individual being attacked by Gangster Disciples in a particular correctional facility. Counsel testified that he obtained an order from the trial judge to have the petitioner incarcerated at a different facility.

Subsequent to the evidentiary hearing, the post-conviction court entered an order expressing its findings of fact and conclusions of law and denying post-conviction relief. The court found that trial counsel fully advised the petitioner during the course of his case and furnished the petitioner with transcripts and documents obtained through the discovery process. The court found that trial counsel thoroughly apprised the petitioner of the nature of the charges, the range of possible sanctions, the available theories of defense, and the probabilities of results. Essentially, the court determined that counsel did not perform deficiently in failing to advise and counsel the petitioner.

In addition, the post-conviction court found that counsel, through his own efforts and those of an investigator, thoroughly investigated the case and prepared it for trial. The court found that counsel was fully prepared for trial. The court discerned no deficiency of counsel's performance in investigating and preparing the petitioner's case.

The court further found that the petitioner did not carry his burden of establishing that counsel did not adequately explain the terms of the plea agreement. The court determined that trial counsel and the trial judge fully acquainted the petitioner with the terms of the agreement, including the mandatory provision for serving 100 percent of the sentence.

The post-conviction court then addressed the petitioner's claim that his plea was involuntary or unknowing. The court first found that the petitioner failed to establish that he was misinformed about his release eligibility date. The judge cited the various written notations in the plea papers and the judgments that correctly referred to the 100 percent-of-service requirement. Additionally, the court found no basis for concluding that the petitioner was uninformed about the nature of the charges against him and the applicable minimum and maximum penalties provided by law. The post-conviction court determined that the trial judge adequately informed the petitioner

of these aspects of the charges during the plea colloquy. The court held that the petitioner's plea was based upon a full comprehension of the rights he was waiving and was, therefore, knowing and voluntary.

A post-conviction petitioner bears the burden of establishing, at the evidentiary hearing, his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901, n.3 (Tenn. 1992). An appellate court is bound by the trial court's findings of fact unless it concludes that the evidence in the record preponderates against those findings. *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The Sixth Amendment of the United States Constitution and Article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975). When a defendant claims ineffective assistance of counsel, the standard applied by the courts of Tennessee is "whether the advice given or the service rendered by the attorney is within the range of competence demanded by attorneys in criminal cases." *Hicks*, 983 S.W.2d at 245 (quoting *Summerlin v. State*, 607 S.W.2d 495, 496 (Tenn. Crim. App. 1980)).

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the United States Supreme Court defined the Sixth Amendment right to effective assistance of counsel. First, the appellant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and must demonstrate that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Constitution. *Id.* at 687, 104 S. Ct. at 2064. Second, the petitioner must show that counsel's performance prejudiced him, that the errors were so serious as to deprive the defendant of a fair trial, and call into question the reliability of the outcome. *Id.*

A reviewing court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance and must evaluate counsel's performance from counsel's perspective at the time of the alleged error and in light of the totality of the evidence. *Id.* at 695, 104 S. Ct. at 2070. The petitioner must demonstrate that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*, 104 S. Ct. at 2070.

To establish ineffective assistance of counsel in Tennessee, evidence stemming from a failure to prepare a sound defense or present witnesses must be significant. However, a reasonable probability of being found guilty of a lesser charge, or a shorter sentence, satisfies the prejudice requirement of *Strickland*. *Hicks*, 983 S.W.2d at 246.

In cases involving a guilty plea or plea of *nolo contendere*, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would

have insisted upon going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); *Hicks*, 983 S.W.2d at 246.

In the present case, the record supports the trial court's conclusions that trial counsel did not perform deficiently. Indeed, upon our review of the record, we conclude that trial counsel rendered a high level of performance. The petitioner utterly failed to demonstrate ineffective assistance of counsel.

We now address the petitioner's claim that his pleas were not voluntarily and knowingly made. Certainly, when a defendant opts to plead guilty, the plea must be voluntarily, understandingly, and knowingly entered to pass constitutional muster. *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713 (1969). In Tennessee, a plea must be made voluntarily and with full understanding of its consequences. *State v. Neal*, 810 S.W.2d 131, 134-35 (Tenn. 1991), *overruled in part on other grounds by Blankenship v. State*, 897 S.W.2d 902 (Tenn. 1993); *State ex rel. Barnes v. Henderson*, 220 Tenn. 719, 727, 423 S.W.2d 497, 501 (1968). Entry of a guilty plea constitutes a waiver of constitutional rights including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1714. Waiver of these constitutional rights may not be presumed from a silent record. *Id.*; *Hicks*, 983 S.W.2d at 246.

In the present case, the issue of the validity of the guilty plea is narrowed to a claim that the conviction court did not fully advise the petitioner pursuant to the provisions of Tennessee Rule of Criminal Procedure 11. Specifically, the petitioner claims that the conviction court did not apprise him that he might be acquitted at trial, failed to explain the minimum and maximum sentences provided by law, and failed to explain that his conviction would serve to enhance his punishment should he later be convicted of another crime.

In determining whether a plea of guilty was voluntarily, understandingly, and intelligently entered, this court, like the trial court, must consider all of the relevant circumstances that existed at the entry of the plea. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A reviewing court may look to any relevant evidence in the record to determine the voluntariness of the plea. *Id.* Rule 11 of the Tennessee Rules of Criminal Procedure and our supreme court's decisions in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), and *State v. McClintock*, 732 S.W.2d 268 (Tenn. 1987), control the guilty plea process in Tennessee. Trial judges are required to adhere substantially to the procedure prescribed in the rule. A submission hearing transcript must establish on its face that the trial court substantially complied with the requirements of Rule 11 and *Boykin v. Alabama* and the teachings of *Mackey* and *McClintock*. *See Turner*, 919 S.W.2d at 352.

As mentioned above the federal constitution requires that a guilty plea be knowing and voluntary. *See generally Boykin*, 395 U.S. at 243, 89 S. Ct. at 1712. "To be voluntary [the plea] must be knowledgeable and the failure to properly instruct a defendant is a violation of due process and the guilty plea is void." *State v. Newsome*, 778 S.W.2d 34, 35 (Tenn. 1989). The constitutionally required instructions, however, relate to the waiver of certain "federal constitutional

rights," namely, the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront the accusing witnesses. *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1712; *Neal*, 810 S.W.2d at 135.

In *Mackey*, a direct appeal of a conviction based upon a guilty plea, the Tennessee Supreme Court, in an exercise of its "supervisory power to insure that the courts of this State afford fairness and justice to defendants in criminal cases," promulgated a procedure for trial courts to follow when accepting guilty pleas. *See Mackey*, 553 S.W.2d at 340. The court acknowledged that the litany of instructions contained in the procedure were "stricter standards than those mandated by . . . *Boykin*." *Id.* This litany includes instructions on the mandatory minimum and the maximum possible penalties which the accused faces and advice on the possibility that punishment may be based upon a consideration of prior convictions. *Id.* at 341.

Many, but not all, of the *Mackey* guilty plea requirements are now set forth in Tennessee Rule of Criminal Procedure 11(c). However, the three basic waiver issues that were identified in *Boykin* – the privilege against compulsory self-incrimination and the rights to a jury trial and to confront witnesses – continue to be the touchstone for constitutional concerns about guilty pleas. *See, e.g., State v. Prince*, 781 S.W.2d 846, 852 (Tenn. 1989); *Bentley v. State*, 938 S.W.2d 706, 711 (Tenn. Crim. App. 1996), *overruled on other grounds by State v. West*, 19 S.W.3d 753 (Tenn. 2000). The additional procedural requirements set forth in Rule 11, *Mackey* and *McClintock* do not raise "issue[s] of constitutional dimensions." *Prince*, 781 S.W.2d at 852; *see also Bryan v. State*, 848 S.W.2d 72, 75 (Tenn. Crim. App. 1992). Thus, the petitioner's instant complaints about his guilty pleas are based upon non-constitutional elements of *Mackey*. *See Neal*, 810 S.W.2d at 138 (failing to warn that "the resulting judgment of conviction may be used in a subsequent proceeding to enhance the punishment" does not raise a matter of constitutional concern); *Prince*, 781 S.W.2d at 853 (stating that advice about the "future use of prior convictions and the future use of the case under consideration . . . is not based upon any constitutional provision"); *Bryan*, 848 S.W.2d at 75 (stating that advice about minimum and maximum punishments is not constitutionally based). As such, these complaints are not justiciable in a post-conviction proceeding. *See* Tenn. Code Ann. § 40-30-103 (2003) (establishing constitutional violations as the sole bases for post-conviction relief); *Wills v. State*, 859 S.W.2d 308, 311 (Tenn. 1993); *McClintock*, 732 S.W.2d at 271; *Bryan*, 848 S.W.2d at 75.

Accordingly, the petitioner's claims that the conviction court inadequately advised him pursuant to Rule 11(c) are not cognizable in this post-conviction proceeding.

For the reasons explained above, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE