IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

## STATE OF TENNESSEE v. ARTHUR BUFORD

**Appeal from the Criminal Court for Shelby County**
**No. 02-08547     John P. Colton, Jr., Judge**

_____

**No. W2004-00786-CCA-R3-CD  - Filed August 18, 2005**

_____

The defendant, Arthur Buford, who was indicted for aggravated perjury, was convicted of perjury. The trial court imposed a sentence of eleven months and twenty-nine days. In this appeal, the defendant asserts (1) that the evidence is insufficient to support the conviction; (2) that the state failed to make a proper election of offenses; and (3) that the trial court erred by permitting the defendant's former attorney to testify as a witness for the state. The judgment of the trial court is reversed and the cause is remanded for a new trial.

**Tenn. R. App. P. 3; Judgment of the Trial Court Reversed and Remanded**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Ross Sampson, Memphis, Tennessee, for the appellant, Arthur Buford.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Michelle Parks, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In January of 2002, the defendant was tried and convicted of two counts of first degree murder. Appearing as a witness on his own behalf at the trial, the defendant acknowledged that he shot the victims but claimed that he had done so in self-defense. At the sentencing hearing, which was held the following month, the defendant contradicted his earlier testimony, contending that he had not, in fact, killed the victims and explaining that he admitted shooting the victims only because his trial counsel had instructed him to lie. Approximately ten months later, the grand jury returned an indictment which provided as follows:

> [The defendant] during the period of time between the dates of January 7, 2002 and February 15, 2002 in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully and knowingly make inconsistent material statements,

with intent to deceive under oath, in connection with an official proceeding to wit: a trial of [the defendant] in Division 2 of the Criminal Courts of Shelby County, Tennessee . . . said inconsistent statements pertaining to his involvement in the murders of Cedric Moerings and Tyler Jones . . . knowing the statements cannot both be true, in violation of T.C.A. 39-16-703, against the peace and dignity of the State of Tennessee.

At the trial on the aggravated perjury charge, Gerald Skahan, who represented the defendant during the murder trial, testified that the defendant made the choice to appear as a witness at his trial. Attorney Skahan explained that although he could not recall the exact testimony, he remembered that the defendant admitted that "he had shot and killed these two young men but it was the results of a struggle. It was more in self-defense than any premeditated act." According to Attorney Skahan, the defendant then testified at the sentencing hearing that he did not kill the victims and that "his attorney . . . had suggested that he tell the people that he'd done it when he actually didn't do it." Attorney Skahan adamantly denied having advised the defendant to commit perjury.

During cross-examination, Attorney Skahan acknowledged that his relationship with the defendant was contentious. He also conceded that the defendant, who was only eighteen or nineteen years old at the time of trial, was unfamiliar with the criminal justice system.

Jerry Kitchen, the assistant district attorney general who acted as the prosecutor in the murder case, testified that the defendant had sworn during the murder trial that "he had gone to this . . . apartment to return a pistol that he had borrowed. And as a result of returning the pistol [he] got into an argument with one of the . . . victims . . . and ended up shooting him and the other victim in self-defense." He stated that at the sentencing hearing the defendant then swore that "he had lied under oath, admitted that he had committed perjury. . . . [T]hat he was not responsible for the two murders. That he had lied based upon advice of his counsel." According to Kitchen, the defendant perjured himself by giving inconsistent testimony at trial and at the sentencing hearing. He explained, "[I]t doesn't matter whether the first . . . testimony was the truth or the second testimony was the truth. That doesn't matter under the law . . . . In other words, they can't both be true. And, therefore, . . . that's what the statute claims is perjury."

Joy Barnes, the court reporter who prepared the transcript of the defendant's murder trial, read the defendant's testimony into evidence. At the murder trial, the defendant had testified that on the evening of the murders he was in a vehicle with Omar Hurd when he learned that Hurd had possession of a gun belonging to one of the victims. The transcript confirmed that the defendant had claimed that when he discovered Hurd had possession of the weapon, he drove to the victim's apartment complex in order to return it. His trial testimony was that when he gave the gun to the victim Moerings, Moerings pointed it at him, "[s]aying all kind of crazy stuff," causing him to fear for his life. According to the defendant, he "reached out with [his] left hand and . . . twisted [the gun] and got it from [Moerings] and shot and then he fell." He testified that when the other victim then "rushed at" him, he shot again in self-defense, believing that the victim intended to kill him.

Charrel Gambill, the court reporter who transcribed the testimony at the sentencing hearing, read the defendant's testimony from that hearing into evidence. The defendant had claimed in the proceeding that he was "not responsible for what happened" and his attorney had forced him to lie: "[S]ay that you did it, and I can help you, or you say you didn't do [it] and I can't do anything for you." At that point in the hearing, the following exchange took place between the defendant and the trial judge:

> THE COURT: Wait just a minute. What do you mean you had nothing to do with it?
> ANSWER: When I went over there to bring them the gun back, I dropped it off and left. I didn't even go inside the apartment.
> THE COURT: Just a minute. So when you went to the house, the apartment, you left the gun in the apartment and left. You didn't do the shooting?
> ANSWER: I gave the pistol to him and left.
> THE COURT: And you didn't do the shooting?
> ANSWER: No.
> THE COURT: So what you're telling me today is that your lawyer is the one that told you to admit that you did the shooting?
> ANSWER: Him and the officers when they came and arrested me.
> THE COURT: So your lawyer here told you to admit that you shot those two men?
> ANSWER: He said that that's the only way that he can help me plan the defense. That's the only way he can help me out of the situation.
>
> \*         \*         \*
>
> THE COURT: So Mr. Skahan told you to lie, that you shot the two men. He told you to lie that you went into the apartment and fired the shots. That whole thing was a lie, planned by Mr. Skahan, is that what you're saying?
>
> \*         \*         \*
>
> ANSWER: He told me to embrace the statement. He told me to say what was in the statement and that's what would help me out of the situation.

During cross-examination by the state, the defendant admitted that he committed perjury during the trial, asserting that his testimony that he shot the victims was a lie.

The defendant's mother, testifying on his behalf, stated that it was her belief that the defendant provided false testimony at trial. She explained that Attorney Skahan "told him that was the best defense he could give him."

At the perjury trial, the defendant testified that his trial attorney had advised him that the only viable defense to the charges was one of self-defense. He claimed that he provided false testimony at trial because his attorney, Skahan, "told [him] out of his own mouth plainly, look, I can get you voluntary manslaughter if you take this statement and repeat this in front of the jury. . . . And the majority of the time when he came [to the jail], that's all he did was went over that." The defendant also insisted that his attorney had threatened him by suggesting that the only way to avoid the death

penalty was to admit the shootings and claim self-defense. He contended that he provided truthful testimony at the sentencing hearing, explaining that he was "[t]ired of being put in a situation where [he] felt like [he was] being forced to lie just to defend [him]self, and feeling like the truth would really help [him] out."

## I

In this appeal, the defendant first asserts that the evidence is insufficient to support the conviction. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Perjury, as relevant to this case, is defined as the making of "a false statement, under oath," with the intent to deceive. Tenn. Code Ann. § 39-16-702(a)(1). The evidence adduced at trial established that during his trial for first degree murder, the defendant swore under oath that he shot and killed the victims in self-defense. At his sentencing hearing, the defendant testified that he had lied at trial and claimed that he had not killed the victims. Later, at his trial on the perjury charge, the defendant again contended that he lied during the murder trial. While he insisted that he had lied at his murder trial only because his attorney had instructed him to do so, the jury was free to reject this testimony. See Tenn. Const. art. I, § 19; Byrge, 575 S.W.2d at 295. In our view, the evidence is sufficient to support the conviction.

## II

The defendant next contends that the state's failure to make a proper election of offenses deprived him of the right to a unanimous jury verdict. He argues that because the state failed to elect whether the perjury occurred at the murder trial or at the sentencing hearing, some of the jurors could have based the conviction on his trial testimony and some on the testimony at the sentencing hearing. The state submits that because the proof did not establish more than one criminal offense, there was no duty to elect.

There is, of course, a fundamental constitutional right under Tennessee law to a unanimous verdict before a conviction for a criminal offense may be imposed. State v. Shelton, 851 S.W.2d 134, 137 (Tenn. Crim. App. 1993); State v. Brown, 823 S.W.2d 576, 581 (Tenn. Crim App. 1991);

see also State v. Brown, 762 S.W.2d 135, 137 (Tenn. 1988). Protection of this right may require special precautions by the trial court to ensure that the jury does not reach a "patchwork verdict" based on different offenses. State v. Forbes, 918 S.W.2d 431, 445-46 (Tenn. Crim. App. 1995). When the proof shows the commission of multiple acts with multiple results, the results being separate criminal offenses, and there are insufficient counts in the charging instrument to accommodate all of the offenses shown, the usual precaution to assure jury unanimity is to require the election of offenses. State v. Burlison, 501 S.W.2d 801, 804 (Tenn. 1973); State v. Clabo, 905 S.W.2d 197, 205 (Tenn. Crim. App. 1995); Shelton, 851 S.W.2d at 137. "The jury's consideration must be focused on one or more charged offenses by some effective means of election, in order to ensure unanimity on those offenses and no others." Shelton, 851 S.W.2d at 138. When the state presents proof on many offenses within an alleged time period, but neglects election, the jury is essentially permitted to "reach into the brimming bag of offenses and pull out one for each count." Tidwell v. State, 922 S.W.2d 497, 501 (Tenn. 1996). Where there is technically one offense, but the state presents evidence of more than one act that might constitute the offense, the defendant is still entitled to the protection of unanimity:

> In cases involving evidence which shows a real potential that a conviction may occur as a result of different jurors concluding that the defendant committed different acts, each of which separately showing the commission of an offense, the trial court must augment the general unanimity instruction to insure that the jury understands its duty to agree unanimously to a particular set of facts. The assessment of this potential would involve consideration of the allegations made and the statutory offense charged, as well as the actual evidence presented.

Brown, 823 S.W.2d at 583. The duty to ensure unanimity exists on the part of the trial court even in the absence of a specific request by the defendant. Burlison, 501 S.W.2d at 804; see also State v. Mitchell, 737 S.W.2d 298, 300 (Tenn. Crim. App. 1987).

The state, citing State v. Lemacks, 996 S.W.2d 166, 171 (Tenn. 1999), and State v. Johnson, 53 S.W.3d 628, 633 (Tenn. 2001), argues that there is no requirement that the jury unanimously agree on the theory of the crime so long as there is unanimous agreement as to the defendant's guilt. In Lemacks, our supreme court held that the state was not required to elect between the theories of criminal responsibility and direct liability when seeking a conviction for driving under the influence. See Lemacks, 996 S.W.2d at 171. Our high court ruled that where there are separate theories of the defendant's guilt for a single offense based upon a single criminal occurrence, a general guilty verdict satisfies the unanimity requirement. See id. Our supreme court ruled similarly in Johnson, which involved a conviction for aggravated sexual battery where there was proof of more than one instance of sexual contact, holding that "[i]f the entire instance of sexual contact occurs quickly and virtually simultaneously, then only one offense has occurred, even if more than one touching has occurred." Johnson, 53 S.W.3d at 633. Our high court observed that the defendant's right to jury unanimity was protected even if "some of the jurors may have based their finding on one touching, and others may have based their finding on the other touching." Id.

In our view, both Lemacks and Johnson are distinguishable. In Lemacks, there was proof of only a single offense with two separate theories of how that offense might have occurred, criminal responsibility for the acts of another and direct liability. In this case, however, the proof established that the defendant had given testimony on two separate occasions occurring over one month apart, either one or both of which could have supported a conviction for perjury. The defendant claimed that he had provided false testimony at his first degree murder trial. The jury was also free, as the state suggested, to determine that the defendant had lied at his sentencing hearing in order to obtain a more lenient sentence. The jury was equally free to determine that the defendant had lied on each occasion. The time frame of the indictment included both the trial and the sentencing hearing. The defendant made several statements during each proceeding, the most prominent of which were his contradictory statements regarding whether he had shot the victims. It is unclear whether the verdict reflects unanimity on a particular set of facts. Unlike Johnson, wherein the acts occurred simultaneously, there was a temporal separation between the two potentially criminal acts in this case.

Finally, this case is distinguishable from Smith v. State, 76 Tenn. 386 (1881). In that case, Smith swore under oath before the grand jury that he had observed Weakley betting "on a game of hazard." Later, at Weakley's trial, Smith swore under oath that he did not see Weakley bet on the game and "had never seen him bet in his life." Smith was subsequently indicted for two counts of perjury, one relating to the testimony he provided to the grand jury and the other to the testimony he provided at Weakley's trial. Smith was convicted of one count of perjury but the appellate record did not establish which count was the basis of the conviction. Smith complained on appeal that the state should have been required to elect between the offenses. Our supreme court ruled that "in a case like this, where it might be difficult for the State to determine on which occasion the false swearing was done, and where it was probable perjury had been committed, . . . the action of the trial court [not compelling an election] was altogether proper." The court concluded that "[t]he indictment informed [the defendant] that he had sworn falsely in one case or the other, giving him ample opportunity to make his defense." In Smith, although there were two instances of testimony that could have supported a conviction, each was covered by a separate count in the indictment. Thus, there was no danger of a "patchwork" verdict because the jurors were required to unanimously agree as to the defendant's guilt or lack thereof on each count. Here, there was evidence of two distinct acts but only one count in the indictment. While it may not have been necessary for the state to have made an election under the rationale of Smith, it is our view that the trial court should have provided an augmented unanimity instruction. See Brown, 823 S.W.2d at 583.[1]

---

[1] No particular wording is required. It is sufficient if the trial court instructs the jury that its verdict must be unanimous as to the particular set of facts supporting the conviction. This court has observed that the instructions were sufficient in a child sexual abuse case involving multiple incidents during the time frame set out in the indictment when the trial judge emphasized to the jury that it must unanimously agree as to which specific incident would be the basis of the conviction. Neither this court nor our supreme court has adopted an augmented unanimity instruction. There is no augmented unanimity instruction in the Tennessee Pattern Jury Instructions. The Sixth Circuit Court of Appeals has adopted an instruction that provides some guidance:

(continued...)

Our next inquiry is whether the error can be classified as harmless. In <u>State v. James Clayton Young, Jr.</u>, No. 01C01-9605-CC-00208 (Tenn. Crim. App., at Nashville, May 22, 1998), this court conducted a harmless error analysis of the trial court's failure to give an augmented unanimity instruction. In that case, the defendant was convicted of felony murder during the perpetration of "rape or attempted rape." The jury instructions also contained the disjunctive language "rape or attempted rape." Throughout the trial, reference was made to both rape and attempted rape and the defendant admitted both. This court ruled that "[a]lthough the wording of the indictment, the trial court's instructions, and the jury verdict raise the specter of a 'patchwork verdict,' . . . no 'real potential' for a non-unanimous verdict exists." This court reasoned that while "[t]here are very limited instances wherein a harmless error analysis is appropriate in the resolution of election or unanimity issues," the "circumstances fit within that limited, harmless error category on the issue of jury unanimity."

In this case, the defendant admitted at trial that he lied during his murder trial when he testified that he had killed the victims. During opening statements, the prosecutor made the following remarks:

> During the trial of [the defendant] he testified. . . . He swore under oath to tell the truth and he testified, I shot and killed Cedric Moerings and Tyler Jones, but I did in self-defense . . . . The defendant was convicted. . . . [A]t the sentencing hearing the defendant again chose to testify . . . . And at that proceeding he said I did not kill Cedric Moerings and Tyler Jones.
>
> He admittedly said he perjured himself. I lied at my trial. And I lied because my attorney told me to lie. That, ladies and gentlemen, is aggravated perjury.

Assistant District Attorney Kitchen was permitted to testify that "it doesn't matter whether the first . . . testimony was the truth or the second was the truth. That doesn't matter under the law . . . those are inconsistent with each other. In other words, they both can't be true. And, therefore, that's what

[1](...continued)

(1) One more point about the requirement that your verdict must be unanimous. Count _____ of the indictment accuses the defendant of committing the crime of _____ in either one of two different ways. The first is that he _____. The second is that he _____.

(2) The government does not have to prove both of these for you to return a guilty verdict on this charge. Proof beyond a reasonable doubt of one or the other is enough. But in order to return a guilty verdict, all twelve of you must agree that the same one has been proved. All of you must agree that the defendant _____. Or all of you must agree that he _____.

Hon. Leonard B. Sand et al., <u>Modern Federal Jury Instructions -Criminal</u> § 8.03A (Matthew Bender & Co., Inc. 2005) (1984).

the statute calls perjury." Finally, during closing argument, the state repeated its contention that it did not matter which statement the jury thought was a lie:[2]

> Did [the defendant] lie during his testimony either at trial or during sentencing? Ladies and gentlemen, it does not matter which one was the truth. The . . . issue that's before you is whether or not he swore to tell the truth . . . and at some point he lied. . . .
>
>      *        *        *
>
> He asked twelve ladies and gentlemen to say not guilty, but he was convicted. And then he was not satisfied with that conviction. So he then goes to the sentencing hearing trying to do whatever he can to save his own skin because he told you under oath he would lie to protect himself. . . .
>
>      *        *        *
>
> And I told you that it doesn't matter which is the truth, whether he did it or he didn't. The fact is that he lied.

Because the state repeatedly told the jury that it was not necessary for them to determine unanimously which sworn testimony amounted to perjury, it is our view that the error cannot be classified as harmless. The jury was invited to reach a "patchwork verdict."

### III

As his final issue, the defendant contends that the trial court erred by permitting Attorney Skahan to testify against him. He claims that the testimony violated the attorney-client privilege. The state submits that the defendant waived the privilege when he offered testimony regarding his communications with his attorney at the sentencing hearing.

Tennessee Code Annotated section 23-3-105 provides that "[n]o attorney . . . shall be permitted, in giving testimony against a client, . . . to disclose any communication made to the attorney . . . as such by such person, during the pendency of the suit, before or afterwards, to the person's injury." Tenn. Code Ann. § 23-3-105. Our supreme court explained the purpose of the rule in McMannus v. State:

> Sound public policy seems to have required the establishment of the rule that facts communicated by a client to his counsel, are under the seal of confidence, and cannot be disclosed in proof. It is a rule of protection to the client, more than a privilege to the attorney. The latter is not allowed, if he would, to break this seal of secrecy and confidence. It is supposed to be necessary to the administration of justice, and the prosecution and defen[s]e of rights, that the communications between clients and their attorn[ey]s should be free and unembarrassed by any apprehensions of

---

[2] Counsel should refrain from attempting to instruct the jury on the law. See Smith v. State, 626 S.W.2d 283, 285 (Tenn. Crim. App. 1981) ("It is the province of the trial judge to state to the jury the law of the case, and it is not always advisable to counsel to do so in final argument because of the possibility of error in their summation.").

disclosure, or betrayal. The object of the rule is, that the professional intercourse between attorney and client should be protected by profound secrecy.

39 Tenn. 213, 215-216 (1858). In <u>Bryan v. State</u>, this court recognized that the attorney-client privilege is "a mainstay of our system of justice" but noted that "the privilege is not absolute nor does it encompass all communications between the client and the attorney." 848 S.W.2d 72, 80 (Tenn. Crim. App. 1992). This court ruled that the privilege applies only to communications made pursuant to the attorney-client relationship and with the intention that the communications remain confidential. <u>See</u> <u>id.</u> Moreover, even where the privilege applies, it may be waived by the client. When the client testifies about alleged communications with his attorney, the privilege is waived as to the reported communication and the attorney may testify as to its contents. <u>See</u> <u>id.</u> (citing <u>Cooper v. United States</u>, 5 F.2d 824 (6th Cir. 1925)).

Here, the defendant testified at his sentencing hearing that his attorney had instructed him to lie during his murder trial. At the trial on the perjury charge, the defendant repeated his claim. The trial court permitted Attorney Skahan to testify regarding the defendant's prior testimony and allowed him to testify that he did not advise the defendant to commit perjury. In our view, the defendant had waived the attorney-client privilege by offering testimony at the sentencing hearing. In consequence, the defendant is not entitled to relief.

Because, however, it is our view that the trial court erred under these particular circumstances by failing to provide an augmented unanimity instruction and because the error cannot be classified as harmless, the judgment of the trial court is reversed and the cause is remanded for a new trial.

 

 

_____

GARY R. WADE, PRESIDING JUDGE