IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 23, 2007

**JAMES MARIO STARNES v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Bedford County**
**No. 9884     J.B. Cox, Judge**

---

**No. M2006-00197-CCA-R3-PC - Filed March 13, 2007**

---

The Petitioner, James Mario Starnes, entered an open guilty plea in the Bedford County Circuit Court to attempted second degree murder and especially aggravated robbery. He received an effective sentence of twenty-five years. He subsequently petitioned for post-conviction relief. In this appeal from the denial of post-conviction relief, the Petitioner argues (1) that he received the ineffective assistance of counsel, (2) that he entered an involuntary guilty plea, and (3) that an insufficient factual basis exists for his plea. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Christopher Westmoreland, Shelbyville, Tennessee, for the appellant, James Mario Starnes.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Charles Crawford, District Attorney General; Ann Filer and Michael D. Randles, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner pled guilty in Bedford County, Tennessee to attempted second degree murder and especially aggravated robbery arising from the theft of money at gunpoint at a steakhouse and the shooting of the restaurant's proprietor. The factual basis for the guilty plea as presented at the guilty plea hearing and recounted by this Court in the Petitioner's direct appeal is as follows:

> PROSECUTOR: Your Honor, on August 20th, 1998, the
> [Petitioner] as well as Leon Terrell Phillips entered Prime Steakhouse
> here in Shelbyville; robbed them of the money bag. Fairly large

amount of money, well over $500. They did so while [the Petitioner] was armed with a firearm.

As they were leaving, after having obtained the money, as the proprietor Mr. Bill Katisis is his name, as they were leaving they shot him or not they. [The Petitioner] shot him, and he was gravely injured. It is a miracle that he lived. He was in the hospital for [an] extended period of time. Astronomical medical bills and very seriously injured.

DEFENSE COUNSEL: The proof would further show after the money was obtained and started out the door the proprietor followed-[the Petitioner] wants this on the record-to the door in an effort to try to retrieve the money. At that point there was some small struggle. I think the gun went off. This is when he was shot.

PROSECUTOR: The [Petitioner] did make a statement to this.

DEFENSE COUNSEL: That's correct.

THE COURT: Mr. Starnes, you heard what the State said they are prepared to prove. Is that what happened?

THE [PETITIONER]: Yes, sir.

State v. James Mario Starnes, No. M2002-01450-CCA-R3-CD, 2003 WL 1094071 at *1 (Tenn. Crim. App., Nashville, Mar. 13, 2003). The trial court accepted the Petitioner's open guilty plea. The Petitioner was sentenced to ten years and nine months for the attempted second degree murder and twenty-five years for the especially aggravated robbery, to be served concurrently in the Department of Correction.

The Petitioner failed to file a timely notice of appeal. The Petitioner then filed a pro se post-conviction petition. The trial court entered an order granting a delayed direct appeal of sentencing issues. On direct appeal, this Court concluded that the Petitioner was attempting to challenge the sufficiency of the evidence to support his conviction. As such, this Court determined that the Petitioner had waived this issue when he entered his guilty plea. Therefore, we dismissed the Petitioner's appeal. See James Mario Starnes, 2003 WL 1094071.

The Petitioner subsequently filed a petition seeking post-conviction relief, which the trial court summarily dismissed. The Petitioner appealed the trial court's summary dismissal of his petition for post-conviction relief. This Court reversed and remanded the case to the trial court for

an evidentiary hearing, concluding that the petition did state a colorable claim for post-conviction relief. See James Mario Starnes v. State, No. M2004-01442-CCA-R3-CD, 2004 WL 3304658 (Tenn. Crim. App., Nashville, Apr. 15, 2005). Counsel was appointed, and an amended petition was filed.

At the post-conviction relief hearing, the Petitioner argued that his trial counsel did not fully advise him of the legal issues of his case and that he was not aware of potential defense arguments when he pled guilty. First, with regard to the especially aggravated robbery charge, the Petitioner asserted that his attorney should have proceeded under the theory that he could only be found guilty of aggravated robbery. This theory rested upon the argument that the "serious bodily injury" to the victim only occurred after the robbery was complete and the Petitioner was perfecting his escape. Second, with regard to his attempted murder charge, the Petitioner asserted that he did not have the requisite intent to be found guilty of attempted second degree murder, arguing apparently that the shooting was accidental. The Petitioner contends that, if he had been advised of the legal issues in his case, he would not have entered a guilty plea.

The Petitioner testified that he entered his guilty plea "due to the advice of [his] attorney." With regard to the especially aggravated robbery charge, the Petitioner stated that he told his attorney after researching the law that he "should be charged with aggravated robbery" instead of especially aggravated robbery. The Petitioner stated that he came to this conclusion because he "knew [that he] didn't shoot the man during the robbery" as he had already gotten the bag of money and was trying to escape when he shot the victim. The Petitioner stated that he asked his attorney about this legal issue "[a]t least three or four" times. The Petitioner testified that his attorney did not believe that this was a good defense and focused upon the fact that "the man got shot twice, he almost died, that is all he seemed to be concerned about. That the man did get hurt."

With regard to the attempted second degree murder charge, the Petitioner testified that he did not intend to kill the victim but that the "gun [went] off . . . a time or two . . . ." He testified that his attorney "didn't discuss any possible defenses" with him. He also stated that his attorney "did say something that he knowed [sic] there is no way they could convict [him] of attempted first degree murder."

With regard to the ultimate decision to plead guilty, the Petitioner testified that his attorney "advised [him] to plead guilty." When he explained that he was concerned he would lose his right to an appeal, he testified that his attorney informed him of his option to enter an "open plea." The Petitioner asserted that he believed , if he entered an open plea, he would retain his right "to appeal everything; conviction and everything." He stated that he believed he would be able to appeal the legal issues regarding the timing of the serious bodily injury for especially aggravated robbery and the intent for attempted second degree murder. The Petitioner ultimately stated that he would not have pled guilty if he had understood that he could not appeal these issues.

The Petitioner admitted that, when he entered his guilty plea, the trial judge did advise him of his rights and asked him the required litany of questions. The Petitioner stated that he was advised of his right to an attorney, his right to a trial by jury, his right to subpoena witnesses, and his right to appeal a jury verdict and sentence. However, the Petitioner stated that he did not "remember" the trial judge instructing him that, by entering an open plea, he would waive all of those rights except the right to appeal his sentence.

With respect to the result of his guilty plea, the Petitioner stated that the best offer he had from the State before trial was to plead guilty and accept consecutive sentences which would have been an effective sentence of forty-two years. The Petitioner stated that his trial attorney was able to persuade the sentencing judge to run the sentences concurrently for an effective sentence of twenty-five years.

The Petitioner's trial counsel testified at the post-conviction hearing. With regard to the especially aggravated robbery charge, trial counsel testified that he was aware of a prior case[1] where a robbery occurred at one location and other offenses occurred down the street. Trial counsel stated that he discussed this case with the Petitioner but explained to him that the facts of this case were probably distinguishable from the Petitioner's offense because there was not a significant break between the taking of money and the shooting. Trial counsel explained that the Petitioner and the victim both stated the shooting occurred "inside the door" of the restaurant or "close to the door" as the Petitioner and his accomplice were attempting to flee with the money.

With regard to sentencing, trial counsel stated that he advised the Petitioner that he would more than likely receive concurrent sentences if he allowed the trial judge to determine the sentence. Trial counsel testified that the State's only offer of a plea agreement included consecutive sentences. Trial counsel stated that he "only" advised the Petitioner that "he could appeal the sentence imposed by the judge." Trial counsel further stated that the trial judge always "advised the client that they had a right to appeal the [sentence] entered by the Court but they do not have a right to appeal the conviction they pled guilty to."

With regard to the decision to plead guilty, trial counsel stated that the Petitioner "did not want to go to trial." Trial counsel stated that he explained the Petitioner's right to receive a trial if

---

[1] The case that trial counsel discussed with the Petitioner was State v. David Owens, No. 02C01-9706-9706-CR-00204, 1998 WL 211795 (Tenn. Crim. App., Jackson, May 1, 1998), rev'd, 20 S.W.3d 364 (Tenn. 2000). As the trial court noted in its findings, the Petitioner's offense in January of 1999 occurred before the Owens case was reversed by the Tennessee Supreme Court. As such, the Petitioner's trial attorney was advising him based upon the Court of Criminal Appeals decision.

he so chose. Ultimately, trial counsel stated that the Petitioner never gave any indication that the open plea was not a voluntary decision by the Petitioner.

At the conclusion of the post-conviction hearing, the trial court dismissed the Petitioner's petition. The trial judge orally stated his findings of fact and conclusions of law:

> [THE COURT]: As to the [P]etitioner's petition, the Court is not inclined to grant the relief that the [P]etitioner is seeking here. The Court believes that the burden of proof to be sustained in this matter is a very high burden of proof. It is clear and convincing proof in this matter and the Court does not believe that the [P]etitioner has met that burden of proof.

> In that regard, as a point of analysis, the Court is inclined, based upon being present in court to resolve any and all conflicts concerning any credibility issues in favor of [trial counsel] and against the [P]etitioner in this matter.

> That can most easily been [sic] borne out by the fact that [the Petitioner] gave the police at least two different statements and there was a statement made to [trial counsel] that [trial counsel] testified to that he didn't admit that he made to [trial counsel]. Then by the time we get to the plea there is a different statement that has to be insisted upon in the plea. And there is a different statement made to the presentence officer in the matter before then Judge Lee at the time.

> The Court is inclined in that regard to resolve all of those credibility questions in favor of [trial counsel].

> The Court is, I guess, concerned about the legal theory approach used by [the Petitioner] in this matter. I think he is trying to argue that his plea was not made in a knowing, intelligent, voluntary way. In that regard again I would give great weight to [trial counsel's] testimony; less weight to the [P]etitioner's testimony in that regard.

> And take notice from the Court's own experience that Judge Charles Lee would not have allowed an open plea to have gone down

without being assured that the [Petitioner] understood all of the ramifications of that particular open plea.

That not only can be taken from this particular case but that he always used a pattern when dealing with open pleas that he never varied from based upon the Court's experience before him and during the time that the Court has been on the bench when he was on the bench.

He always went over the range of punishment; all of the elements of the criminal offense. They were always thoroughly explained to the [Petitioner] who was attempting to enter a plea and he was especially careful when that plea was open and likely to be on the eve of trial which was likely already scheduled in this matter.

The [Petitioner's] own testimony here today, even . . . though the Court finds some of it suspect, indicates to the Court that he knew he had a right to go to trial and he did not insist upon that right being carried out.

His only issue is his misperception in his own mind that is conveniently raised now that he thought he could appeal any and all issues.

The Court does not find that to be credible testimony here.

The Court is also aware of the number of cases that [trial counsel] respectfully understates when he takes the witness stand and what is done in those cases when he is involved in those cases concerning making sure and make [sic] certain that defendants have their rights completely explained to them in such a way that they understand those rights.

The other curiosity is the effect of <u>Owens</u> and/or <u>Dickson</u> upon this particular post-conviction petition.

The Court is not inclined to agree with the Petitioner or with counsel as it relates to this matter. One matter of curiosity for the

Court is this to be articulated upon the record. Let's assume for a moment that I gave him what he wanted, and I gave him a new trial, his argument would seem to be, Your Honor, I committed two different offenses. I committed the offense of aggravated . . . robbery inside the store and then I shot someone, which was a separate offense, which would be grounds for potentially consecutive sentencing, which the State argued for from the beginning in this matter.

Now, I will be honest with you. I haven't looked it up. Even if he was successful in having Dickson applied to his case now, which I don't believe he would be successful at, I believe he would be bound by the law at the time that the offense was committed, which I think [the Petitioner's counsel] to his credit has conceded would be Owens. . . .

[PETITIONER'S COUNSEL]: The first Owens [opinion]—the Supreme Court Owens was after.

[THE COURT]: Was after.

In that regard he would not be entitled to—I don't think he would, the benefit of Dickson.

. . . .

. . . [T]he Court finds it difficult to understand how [the Petitioner] could successfully commit robbery if [the victim] had been able to successfully stop him even [when] he was in the parking lot.

Now, as it relates to that, I don't find that the distinctions created by those cases particularly hold water and I don't find that his legal advice fell below that required by the law in this setting.

I honestly believe [trial counsel's] legal advice was directly on point with the facts that the Court has been made privileged to hear today.

His issue may have been with how many years he got for especially aggravated robbery, and that was an issue probably to be taken up with Judge Lee by way of an appeal but in terms of the advice given by [trial counsel] concerning that, his best choice if his guilt was not of the actual events was not at issue, would likely to have been [to] take an open plea.

I do agree that he shouldn't have taken the State's offer. I think he made the right choice in that regard and he was given sound legal advice.

Some folks would argue that he had nothing to lose by going to trial. Well, again that is a right that he had that he did not insist upon. There is no doubt in this Court's mind that he was advised he had that right, thoroughly.

In that regard, if you look at the first part of Exhibit 1 in this matter, there is no doubt of his ability or the Court's right to infer that he had the ability to understand those things that were going on around him at the time because he is clearly a graduate from Shelbyville Central High School.

In that regard, a lack of understanding testimony here doesn't hold the same water it might if he was otherwise disabled in some way.

In that regard, I think that the [P]etitioner has failed on each and every point to carry his burden of proof which the Court believes to be a great burden of proof and the Court hereby, based upon those findings, and conclusion hereby dismisses the petition.

The trial judge entered a written order denying the Petitioner's petition. This appeal followed.

**Analysis**

## I. Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

## A. Effective Assistance of Counsel

The Petitioner asserts that his trial counsel was ineffective in advising him to plead guilty and that, but for the constitutionally deficient representation, he would not have entered a guilty plea. The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

The trial court found that the Petitioner did not meet his burden of establishing by clear and convincing evidence that his trial counsel was ineffective. The trial court found that the Petitioner's counsel was not deficient because his "legal advice was directly on point with the facts" of the case and there was no evidence that "his legal advice fell below that required by the law in this setting." The trial court also accredited trial counsel's testimony over the Petitioner's with regard to the facts of the representation as presented at the post-conviction hearing. We conclude that the trial court did not err in its determination that the Petitioner received the effective assistance of counsel.

The evidence presented at the post-conviction hearing demonstrates that the Petitioner's counsel discussed the facts of the case with him and recent case law[2] that was factually similar, yet arguably distinguishable, from the Petitioner's case. The Petitioner informed his counsel that he was guilty of the offense but did not want to go to trial. However, the Petitioner did not want to accept the State's offer, which would have been a guilty plea conditioned upon consecutive sentences for an effective sentence of forty-two years. Furthermore, the Petitioner stated that he wanted to be able to preserve possible issues for appeal. Thus, the Petitioner's counsel recommended that the Petitioner enter an open guilty plea. The Petitioner's counsel advised him that he would still be able to appeal his sentence but that he believed that the trial court would order the sentences to be served

---

[2] In the Petitioner's brief, he argues that trial counsel was ineffective for not discovering the case of State v. Owens, 20 S.W.3d 634 (Tenn. 2000). However, at the time of the Petitioner's guilty plea on January 18, 1999, the case had not yet been decided. Therefore, the Petitioner's counsel relied upon our decision, State v. David L. Owens, No. 02C01-9706-9706-CR-00204, 1998 WL 211795 (Tenn. Crim. App., Jackson, May 1, 1998), to advise his client.

concurrently for an effective sentence of fifteen to twenty-five years. Finally, the trial court specifically found that "[t]here is no doubt in this Court's mind that [the Petitioner] was advised he had [the right to trial], thoroughly." The Petitioner simply did not insist upon that right. Therefore, the record does not preponderate against the trial court's finding that the Petitioner's counsel rendered constitutionally adequate performance. Therefore, we conclude that this issue has no merit.

### B. Voluntariness of Guilty Plea

The Petitioner also contends that his guilty plea was not entered knowingly, intelligently, and voluntarily. When a guilty plea is entered, a defendant waives certain constitutional rights, including the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront witnesses. Boykin v. Alabama, 395 U.S. 238, 243 (1969). "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." Id. at 242. Thus, in order to pass constitutional muster, a guilty plea must be voluntarily, understandingly, and intelligently entered. See id. at 243 n.5; Brady v. United States, 397 U.S. 742, 747 n.4 (1970). To ensure that a guilty plea is so entered, a trial court must "canvass[] the matter with the accused to make sure he [or she] has a full understanding of what the plea connotes and of its consequence[s]." Boykin, 395 U.S. at 244. The waiver of constitutional rights will not be presumed from a silent record. Id. at 243.

In State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), the Tennessee Supreme Court set forth the procedure for trial courts to follow in Tennessee when accepting guilty pleas. Id. at 341. Prior to accepting a guilty plea, the trial court must address the defendant personally in open court, inform the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. See id.; Tenn. R. Crim. P. 11. A verbatim record of the guilty plea proceedings must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into the defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." Mackey, 553 S.W.2d at 341.

However, a trial court's failure to follow the procedure mandated by Mackey does not necessarily entitle the defendant to receive post-conviction relief. See State v. Prince, 781 S.W.2d 846, 853 (Tenn. 1989). Only if the violation of the advice litany required by Mackey or Tennessee Rule of Criminal Procedure 11 is linked to a specified constitutional right is the challenge to the plea cognizable in post-conviction proceedings. See Bryan v. State, 848 S.W.2d 72, 75 (Tenn. Crim. App. 1992). "Whether the additional requirements of Mackey were met is not a constitutional issue and cannot be asserted collaterally." Johnson v. State, 834 S.W.2d 922, 925 (Tenn. 1992).

To obtain post-conviction relief, the Petitioner has the burden of establishing by clear and convincing evidence in the trial court that his guilty plea was entered involuntarily, unknowingly, or unintelligently. The trial court noted that the trial judge who accepted the Petitioner's plea

-11-

followed strict procedures with regard to informing a defendant of the charges, his rights, and the consequences of the plea. The trial court also accredited the testimony of the Petitioner's counsel who stated that he advised the Petitioner thoroughly about the effects of entering an open plea. The trial court also found that the Petitioner was undoubtedly "thoroughly" advised of his right to trial. Although the transcript of the guilty plea proceeding is not part of the record on appeal, the Petitioner bore the burden of bringing forth any evidence that would establish he was unaware of the full import of his decision to plead guilty. The Petitioner did not do so. As such, the record does not preponderate against the trial court's finding that the Petitioner's guilty plea was voluntarily entered.

### C. Lack of Factual Basis for Guilty Plea

Finally, the Petitioner alleges that the trial court lacked sufficient factual basis to accept the Petitioner's guilty plea for especially aggravated robbery. The Petitioner requests this Court to "set aside the plea of guilty" pursuant to Rule 13 of the Tennessee Rules of Appellate Procedure, which states as follows:

> Findings of guilt in criminal actions whether by trial court or jury shall be set aside if the evidence is insufficient to support the findings of the trier of fact of guilt beyond a reasonable doubt.

Tenn. R. App. P. 13(e).

First, this Court has previously determined that lack of a factual basis for a guilty plea is not a basis for post-conviction relief. See, e.g., Powers v. State, 942 S.W.2d 551, 555 (Tenn. Crim. App. 1996). Moreover, the Petitioner is again attempting to challenge the factual sufficiency of his conviction. As we concluded in the Petitioner's direct appeal, the Petitioner waived his right to contest the sufficiency of the convicting evidence by entering a guilty plea:

> A guilty plea conviction is based entirely upon the plea, and the plea constitutes a conviction in and of itself and is conclusive. Beaty v. Neil, 4 Tenn. Crim. App. 86, 467 S.W.2d 844, 847 (Tenn. Crim. App.1971). As a general rule, an accused who enters a plea of guilty to a criminal offense waives the right to appeal. Hobbs v. State, 73 S.W.3d 155, 158 (Tenn. Crim. App. 2001). This rule is subject to a limited number of narrowly defined exceptions. Tenn. R. App. P. 3(b)(2) states:
>
> In criminal actions an appeal as of right by a defendant lies from any judgment of conviction entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals:
>
> . . . .
>
> (2) on a plea of guilty or nolo contendere, if the defendant

-12-

entered into a plea agreement but explicitly reserved with the consent of the state and the trial court the right to appeal a certified question of law dispositive of the action, or if the defendant seeks review of the sentence and there was no plea agreement concerning the sentence, or if the issues presented for review were not waived as a matter of law by the plea of guilty or nolo contendere and if such issues are apparent from the record of the proceedings already had.

See also Tenn. R. [Crim.] P. 37(b). The Appellant's appeal does not fall within any exception. The Appellant's guilty plea in this case was an "open" plea, as provided by Rule 11(e)(1)(B) of the Tennessee Rules Criminal Procedure. As such, the issue presented was waived as a matter of law.

James Mario Starnes, 2003 WL 1094071, at *2. We again conclude that the Petitioner waived his sufficiency claim by entering his guilty plea. As such, the Petitioner is not entitled to relief on this issue.

## Conclusion

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

DAVID H. WELLES, JUDGE