IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 1, 2009

RONNIE JACKSON, JR. v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
No. 06-05479     John T. Fowlkes, Judge

No. W2008-02280-CCA-R3-PC  - Filed October 26, 2009

The Petitioner, Ronnie Jackson, Jr., pleaded guilty to one count of aggravated robbery and two counts of aggravated assault.  As part of his plea agreement, he was sentenced as a Range I, standard offender to eight years for his aggravated robbery conviction and three years for each of his aggravated assault convictions, those sentences to be served concurrently in the Department of Correction.  He now appeals from the Shelby County Criminal Court's order denying post-conviction relief, contending that this denial was error because he received the ineffective assistance of counsel and, consequently, entered his pleas involuntarily and unknowingly. Specifically, he contends that trial counsel failed to properly investigate his case and prepare a defense strategy, that trial counsel pressured him into pleading guilty, and that by entering an Alford[1] plea, he believed he could continue to challenge pre-trial constitutional issues. Following our review of the record, we affirm the judgment of the post-conviction court.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Charles S. Mitchell, Memphis, Tennessee, for the appellant, Ronnie Jackson, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris West, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

---

[1] This type of plea is named after North Carolina v. Alford, 400 U.S. 25 (1970), in which the United States Supreme Court discussed the right of an accused to plead guilty in his or her best interest while professing actual innocence.

**Factual Background**

On May 3, 2007, the Petitioner entered a "best interest" or <u>Alford</u> plea of guilty to one count of aggravated robbery, a Class B felony, and two counts of aggravated assault, a Class C felony. <u>See</u> Tenn. Code Ann. §§ 39-13-102, -402. The remaining count of aggravated assault was dismissed. Pursuant to the terms of the plea agreement, the Petitioner received concurrent terms of eight years for the aggravated robbery conviction and three years for each aggravated assault conviction, resulting in an effective eight-year sentence, as a Range I, standard offender, to be served in the Department of Correction.

The State gave the following recitation of the facts underlying this case at the guilty plea acceptance hearing:

> [B]etween February 26th of `06 and March 1st of 2006, the [Petitioner] went with his co-defendants in McDonald's on Hacks Cross in Shelby County armed with guns and robbed the store at gunpoint, taking money from the manager and during the course of the robbery, aimed a gun at two other employees putting them in fear for their life.

The trial court then spoke with the Petitioner. The Petitioner averred that trial counsel reviewed the plea agreement with him and explained his legal rights, that he understood these rights, and that he affixed his signature to the document. The trial court then reviewed the Petitioner's trial rights with him, and the Petitioner responded appropriately to questioning.

After reviewing those rights, the trial court further inquired as follows:

> [Trial Court:] With all the legal rights in mind and with the possibilities in mind that you have, is it still your desire to enter these three guilty pleas and give up having a jury trial or do you want to have a jury trial? I need you to tell me in your own words what you want me to do. Cause I don't have to approve this. I'm only going to approve this if you want me to and it's up to you, but I want you to tell me in your own words what you want me to do.
>
> [The Petitioner:] I waive the jury trial.
>
> [Trial Court:] Do what?
>
> [The Petitioner:] I waive the jury trial.
>
> [Trial Court:] You're going to waive the jury trial?
>
> [The Petitioner:] Yes, sir.
>
> [Trial Court:] Why are you going to do that? Do you think this is in your best interest?
>
> [The Petitioner:] Yes, sir.

. . . .

> [Trial Court:]  All right.  Any questions for me about your legal rights?
>
> [The Petitioner:]  If I wanted to file any type of constitutional issues or questions, would that have anything to do with hindering them.
>
> [Trial Court:]  Yes.  But by entering this guilty plea you've given up any appeal of the case and you're giving up any pretrial constitutional matters that might be involved in this matter.  This will end this case today if you enter this guilty plea.
>
> [The Petitioner:] So pretty much what you're saying if any violation occurred prior to this plea, I'm waiving them?
>
> [Trial Court:] Right.  You've [sic] basically saying that you think it's in your best interest to go ahead and take this deal that's on the table and in order to take that, you're giving up any of these prior things.  Yes, sir.

The Petitioner then asked about the nature of an Alford plea, and the trial court explained.  The following colloquy then took place:

> [The Petitioner:]  So in other words, it wouldn't have any effect as far as to file a habeas corpus or anything such as that nature?
>
> [Trial Court:] I'm not sure what you mean.  I mean, you can always file a habeas corpus.  The issue will be will you have waived whatever issue it is you're dealing with—
>
> [The Petitioner:]  Right.
>
> [Trial Court:] —on the habeas corpus.  And I don't know the answer.  It depends on what that habeas corpus issue is.  But for all intents and purposes, this is ending the deal, ending it right here.  Any other questions for me?
>
> [The Petitioner:] No, sir.

The Petitioner was then questioned about the voluntariness of his plea:

> [Trial Court:]  All right.  Are you doing this guilty plea of your own free will?  Are doing this of your own free will?  In other words, is somebody forcing you or threatening you or anything like that?  Or is this decision a decision that you've made?
>
> [The Petitioner:]  Well, how you mean by forcing me?  You mean talking about they say they going beat me up or something like that?

-3-

[Trial Court:]  Yeah, something like that.

[The Petitioner:]  Oh, no, they ain't saying they going to beat me up, but, you know, there's other ways to force somebody to do something, you know.

[Trial Court:]  All right.  Well, how are you being forced to do this?  Have you been told that this—the likelihood of you winning at trial is not great?

[The Petitioner:]  Yeah.

[Trial Court:]  Okay.  Well that's not—that kind of force is not the kind of force I'm talking about.

[The Petitioner:]  That's what I'm trying to get at.

[Trial Court:]  Yeah. I understand.  Your lawyer is charged with giving you the best advice that he can based upon his experience and knowledge.  And your lawyer has been around the block a few times.

[The Petitioner:]  Oh, he's given me the best advice.

[Trial Court:]  And he's given you recommendations about what he thinks you ought to do and—

[The Petitioner:]  Right.

[Trial Court:]  —he's supposed to do that.  And he's supposed to try his best to give you the best advice he can give you, and I'm sure he's done that.  But he hasn't done anything improper doing that, has he?

[The Petitioner:]  Nah, no, sir.

At the conclusion of the hearing, the trial court accepted the Petitioner's pleas.

The Petitioner filed a petition for post-conviction relief on August 20, 2007.  Counsel was appointed for the Petitioner, and an amended petition was filed.  The principal allegation supporting these pleadings was that the Petitioner's guilty pleas were not knowingly and voluntarily entered due to ineffective assistance of counsel.  As specific grounds for relief, the Petitioner averred that counsel was constitutionally ineffective in the following ways:  (1) the Petitioner was prejudiced by the "inexplicable withdrawal" of his court-appointed elbow counsel; (2) trial counsel exerted undue pressure on the Petitioner to plead guilty;  (3) trial counsel provided misleading information to the Petitioner regarding his release eligibility date; (4) trial counsel failed to investigate the Petitioner's case or research any possible defenses; (5) trial counsel incorrectly informed the Petitioner that his juvenile record would be presented to the jury; and (6) trial counsel failed to request a mental evaluation of the Petitioner.  A hearing was held on April 3, 2008.

Michele Lynn, a Shelby County Public Defender ("elbow counsel"), testified that she was present at the Petitioner's arraignment when he requested to represent himself. According to Ms. Lynn, the Petitioner "was kind of acting up in court. And so, he did not want to have somebody appointed to represent him. He wanted to represent himself." After inquiring into the Petitioner's competency, the trial judge granted the Petitioner's request and appointed Ms. Lynn as elbow counsel. When asked what her role was as elbow counsel, she replied "to be available and answer questions he might have." She was provided a copy of discovery and mailed it to the Petitioner.

Thereafter, Ms. Lynn talked with the Petitioner, who informed her that he wanted to seek a reduction of his bond. According to Ms. Lynn, the Petitioner wanted a reduction because his co-defendants' bonds were less than his, and they had already been released. He was agitated and frustrated. Ms. Lynn told him that his bond was higher due to his lengthier criminal record; nonetheless, she entered the order "for the bond report for him." At this same time, the Petitioner addressed the trial judge, asking to spend more time in the law library, but the trial judge denied his request. Ms. Lynn also filed the Petitioner's motion to dismiss.

About a month later, the case was set for a bond hearing. Ms. Lynn explained the bond hearing proceedings to the Petitioner and provided him with a legal book on the subject. The case was reset because several family members were not present. The Petitioner then hired Lee Wilson ("trial counsel"), and Ms. Lynn was relieved.

Trial counsel testified that he was retained to represent the Petitioner in December 2006 and that the Petitioner maintained his innocence throughout the proceedings. The Petitioner believed his arrest was illegal due to some errors in the affidavit of complaint; however, trial counsel explained to the Petitioner that the indictment "cured any defects that he had in the affidavit." The Petitioner also took issue with a witness's identification of him at the scene of the robbery, thinking that because the Petitioner was masked during the robbery the witness had been coerced into identifying him. In accordance with Petitioner's request, trial counsel filed a motion to suppress the identification.

The State offered the Petitioner an effective eight-year sentence as a Range I, standard offender and, as a condition of the agreement, the Petitioner had to forego pursuing the motion to suppress. Trial counsel discussed the matter with the Petitioner, and the Petitioner decided to accept the plea. Trial counsel advised the Petitioner it was in his best interest to plead guilty given the overwhelming evidence against the Petitioner: a victim had identified the Petitioner as a robber and his three co-defendants were prepared to testify against him. Trial counsel informed the Petitioner that there was "a great likelihood" he would be convicted if he proceeded to trial; trial counsel also told the Petitioner that a guilty plea waived his pre-trial constitutional rights.

If the Petitioner went to trial, he faced being sentenced as a Range II, multiple offender, which carried a twelve to twenty-year sentence on the aggravated robbery charge alone. Due to his prior criminal record (including two convictions for carjacking), consecutive sentencing was a possibility, and he faced a maximum punishment of approximately fifty years. When the State learned that the Petitioner was a Range II offender, it wanted to revoke the offer; however, following successful negotiations by trial counsel, the State allowed the offer to remain.

When asked about the Petitioner's ability to understand the proceedings, trial counsel responded that the Petitioner was "very intelligent, very smart." In fact, the Petitioner did his own legal research and gave cases to trial counsel for him to review. Trial counsel described the Petitioner as "very actively involved in the defense . . . ." Trial counsel did not see any need to prepare a mental evaluation; moreover, the Petitioner's family did not indicate that the Petitioner was afflicted with any mental health problems.

Trial counsel said that he discussed the Petitioner's rights with him and, after this discussion, the Petitioner still chose to plead guilty. Trial counsel further stated that he informed the Petitioner that a guilty plea was a final judgment, from which there was no appeal.

The trial court inquired if trial counsel was aware of the motion to dismiss filed by the Petitioner, and trial counsel stated that he was aware of the motion and discussed it with the Petitioner. In those discussions, trial counsel opined that the motion was meritless. Moreover, trial counsel conveyed to the Petitioner that, if they proceeded on the motion to dismiss, the State would likely revoke the plea offer.

The Petitioner testified that the basis of his petition was that his constitutional rights had been violated—his arrest was illegal and the photographic identification of him was invalid. He contended that his arrest was illegal because the affidavit of complaint did not specifically name the person who identified him as one of the perpetrators. Additionally, the Petitioner opined that the photospread used to identify him was "highly suggestive" due to the arrangement of the photos and the fact that his eyes were covered. However, the Petitioner confirmed that he was indicted after his preliminary hearing and that the name of the witness who identified him appeared on the second page of the complaint.

In the Petitioner's pro se motion to dismiss, he complained that his Fourth and Fourteenth Amendment rights had been violated due to an illegal arrest and search of his home. He also alleged ineffective assistance of counsel. After the Petitioner was indicted, the trial judge entered an order denying the Petitioner's motion for dismissal without a hearing. While he called this motion to the attention of both of his attorneys, neither ever seemed interested in pursuing the motion.

The Petitioner testified that his attorneys were only interested in a securing a plea agreement. To the Petitioner's knowledge, trial counsel never spoke with witnesses at the scene. Trial counsel encouraged him to plead guilty based upon the evidence against him. The Petitioner felt that he had no other choice than to plead guilty; he believed he was being "railroaded." According to the Petitioner, he had no intention of proceeding to trial, but rather, only wanted his constitutional issues heard. When asked why he pleaded guilty, he responded that he did not want to stay in the county jail and wanted to get to another facility with "a better law library, do some more studying and file a habeas corpus." He also alleged, "Maybe I would need a mental health screen, or something." The Petitioner asserted that, by entering an Alford plea, he believed he was reserving certain issues and that he could pursue these constitutional violations. The Petitioner relayed that the post-conviction hearing had been "a waste of time" because he thought he was getting a hearing on his alleged constitutional violations.

-6-

On cross-examination, the Petitioner acknowledged that he pleaded guilty because it was in his best interest to do so. The Petitioner also confirmed that he potentially faced a much greater sentence if he proceeded to trial, up to a maximum of fifty years.

After hearing the evidence presented, the post-conviction court denied relief. The post-conviction court ruled that the Petitioner had not satisfied his burden of proving that trial counsel was ineffective or that his plea was involuntary. The post-conviction court further determined that there was no indication the Petitioner was under any undue pressure to plead guilty and that the Petitioner understood the proceedings. An order was entered to this effect on September 5, 2008. This appeal followed.

**Analysis**

On appeal, the Petitioner argues that the post-conviction court erred in denying him relief because his guilty pleas were constitutionally infirm due to the ineffective assistance of counsel. Specifically, he contends that both elbow counsel and trial counsel failed to explain to him that, by pleading guilty under Alford, he was waiving any challenge to pre-trial constitutional violations, thereby rendering his pleas involuntary. He also alleges that their preparation, investigation, and assistance were deficient.[2]

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of

---

[2] While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal.

two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. Hill v. Lockhart, 474 U.S. at 56 (citing North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164 (1970)).

When a guilty plea is entered, a defendant waives certain constitutional rights, including the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront witnesses. Boykin v. Alabama, 395 U.S. 238, 243 (1969). "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." Id. at 242. Thus, in order to pass constitutional muster, a guilty plea must be voluntarily, understandingly, and intelligently entered. See id. at 243 n.5; Brady v. United States, 397 U.S. 742, 747 n.4 (1970). To ensure that a guilty plea is so entered,

a trial court must "canvass[] the matter with the accused to make sure he [or she] has a full understanding of what the plea connotes and of its consequence[s]." Boykin, 395 U.S. at 244. The waiver of constitutional rights will not be presumed from a silent record. Id. at 243.

In State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), the Tennessee Supreme Court set forth the procedure for trial courts to follow in Tennessee when accepting guilty pleas. Id. at 341. Prior to accepting a guilty plea, the trial court must address the defendant personally in open court, inform the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. See id.; Tenn. R. Crim. P. 11. A verbatim record of the guilty plea proceedings must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into the defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." Mackey, 553 S.W.2d at 341.

However, a trial court's failure to follow the procedure mandated by Mackey does not necessarily entitle the defendant to seek post-conviction relief. See State v. Prince, 781 S.W.2d 846, 853 (Tenn. 1989). Only if the violation of the advice litany required by Mackey or Tennessee Rule of Criminal Procedure 11 is linked to a specified constitutional right is the challenge to the plea cognizable in post-conviction proceedings. See Bryan v. State, 848 S.W.2d 72, 75 (Tenn. Crim. App. 1992). "Whether the additional requirements of Mackey were met is not a constitutional issue and cannot be asserted collaterally." Johnson v. State, 834 S.W.2d 922, 925 (Tenn. 1992).

Here, the Petitioner claims that he believed by pleading guilty under Alford he could still attack the affidavit in support of his arrest and challenge his identification. He asserts that he was unaware he was waiving these constitutional rights when he pleaded guilty, thus he did not freely enter a voluntary and knowing plea. He also claims that his plea was not knowingly and voluntarily made because of deficiencies in his attorney's investigation and preparation of his case and that trial counsel pressured him into pleading guilty.

The post-conviction court obviously did not accredit the testimony of the Petitioner. Trial counsel testified that he reviewed discovery material with the Petitioner, that they met on multiple occasions, and that they discussed legal and factual concepts, as well as possible defenses. According to trial counsel, he explained to the Petitioner that the indictment cured any defects with the affidavit of complaint. Trial counsel also testified that he informed the Petitioner that he was waiving any challenge to pre-trial constitutional issues. As found by the post-conviction court, the Petitioner conceded that the trial judge explained to him, and he understood, that he was giving up pre-trial constitutional issues when he pleaded guilty.

The Petitioner was described as "very intelligent, very smart" and often performed his own legal research. The Petitioner was also familiar with the legal process as he had two prior convictions for carjacking. The evidence against the Petitioner was overwhelming, and he acknowledged that it was in his best interest to plead guilty. Trial counsel stated that the decision to plead guilty was the Petitioner's alone. Trial counsel testified that he did not exert any undue pressure on the Petitioner; the Petitioner was simply informed of the likelihood of a much longer sentence if he went to trial. Finally, elbow counsel assisted the Petitioner, who desired to proceed

pro se, with any questions he had and filed documents for him until the Petitioner retained other counsel.

In this case, the trial judge did advise and question the Petitioner as mandated by Mackey. The guilty plea transcript reveals that the trial judge carefully reviewed the rights that the Petitioner was waiving and confirms that the Petitioner responded appropriately to questions. The Petitioner affirmed that he had not been forced or coerced into pleading guilty; he also relayed that trial counsel had given him "the best advice." To be sure, the record reflects the Petitioner knew and understood the options available to him prior to the entry of his guilty pleas including the right not to plead guilty and demand a jury trial, and he freely made an informed decision of that course which was most palatable to him at the time.

The Petitioner has failed to show that counsel did not adequately investigate his case or assist him with his case or that he was unduly pressured into pleading guilty. Moreover, it is clear from the record that the Petitioner knew he was waiving all legal issues, including pre-trial constitutional issues. The evidence does not preponderate against the findings of the post-conviction court. In consequence, the Petitioner has failed to establish that his guilty pleas were not knowing and that he was denied the effective assistance of counsel.

**Conclusion**

Based upon the foregoing, we conclude that the post-conviction court did not err by denying post-conviction relief. Accordingly, we affirm the judgment of the Shelby County Criminal Court.

_____
DAVID H. WELLES, JUDGE