IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 23, 2010

## SANDRA KAY HEMBREE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Cocke County**
**No. 0919      Ben W. Hooper, II, Judge**

_____

**No. E2010-00156-CCA-R3-PC - Filed February 4, 2011**

_____

The Petitioner, Sandra Kay Hembree, pleaded guilty to second degree murder and especially aggravated robbery. She received two twenty-year sentences, those sentences to be served concurrently at 100%. She now appeals from the Cocke County Circuit Court's order denying post-conviction relief, contending that this denial was error because she received the ineffective assistance of counsel and, consequently, entered her pleas involuntarily and unknowingly. Specifically, she contends that trial counsel failed to interview the State's witnesses, failed to provide her with discovery materials, and failed to meet with her often enough to adequately prepare for trial. Following our review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

J. Derreck Whitson, Newport, Tennessee, for the appellant, Sandra Kay Hembree.

Robert E. Cooper, Jr., Attorney General; Cameron L. Hyder, Assistant Attorney General; James Dunn, District Attorney General; and W. Brownlow Marsh, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

The Petitioner was originally charged with two counts of first degree murder (premeditated and felony) and one count of especially aggravated robbery. On February 20, 2007, the Petitioner pleaded guilty to second degree murder (as a lesser-included offense of

first degree premeditated murder) and especially aggravated robbery, both Class A felonies. See Tenn. Code Ann. §§ 39-13-210, -403. The charge of first degree felony murder was dismissed. In exchange for her plea, she received concurrent terms of twenty years to be served at 100%.[1]

The State gave the following recitation of the facts underlying this case at the guilty plea acceptance hearing:

> [O]n November the 20th, 2005, [the Petitioner], along with two others, went to 205 Masters Circle in Newport and Cocke County, Tennessee, at the home of Darrell Ramsey. [The Petitioner], along with two others, went inside. One of the defendants had a ball bat and struck Mr. Ramsey in the back of the head knocking his eyeball out upon his check and causing a laceration, a severe laceration on the head.
>
> That one of the defendants then took—one or more of the defendants then took prescription medication, which contained Morphine tablets and approximately fourteen dollars from the person of Darrell Ramsey. Then [the Petitioner], along with two other defendants, ran out behind the apartment in a trail that leads down into a ditch that comes out onto Freeman Street, where they were picked up by two other folks and then left the scene.
>
> Mr. Ramsey was taken to the Baptist Hospital in Cocke County, Tennessee, where he was treated for his injuries. He was taken to Knoxville, Tennessee, and he stayed there until January the 5th of 2006, when he died.
>
> An autopsy was performed by Dr. Darinka Mileusnic-Polchan, who stated that he died as the result of blunt force trauma from the injury that was inflicted by [the Petitioner] and/or the two people that were with her on the 20th of November, 2005, in Newport and Cocke County, Tennessee.

The Petitioner agreed that this narrative summarized what would have been the State's proof if she had proceeded to trial.

At the guilty plea hearing, the trial court first reviewed the Petitioner's constitutional rights with her, including her right to a jury trial, her right to testify in her own defense, and

---

[1] On this same date, the Petitioner also entered a plea in case number 0234 to possession of contraband in a penal institution. She received a sentence of two years at 30% to be served concurrently with the sentence in the present case.

her right to an appeal. The Petitioner then stated that she had an eighth grade education and that she had no difficulty reading or writing. The trial court then asked the Petitioner if she had taken any substance within the last twenty-four hours or had any physical, mental, or emotional condition which would keep her from understanding the proceedings, and the Petitioner replied in the negative. The Petitioner averred that she was satisfied with trial counsel's representation and was satisfied she was "doing the right thing" by entering a plea to the charges. The Petitioner confirmed that trial counsel had discussed possible defenses at trial, the strength of the State's proof, and the range of punishment for these charges with her. The Petitioner confirmed that her signature appeared on the plea agreement and that she was freely and voluntarily waiving her right to a trial by jury. The trial court asked the Petitioner if anyone had promised her anything or forced or coerced her into pleading guilty, and she responded, "No." She also affirmed that she was pleading guilty because she was in fact guilty. The trial court then reviewed the terms of the plea agreement with the Petitioner. The Petitioner had no additional questions for the trial court judge.

Thereafter, the Petitioner filed a petition for post-conviction relief.[2] As grounds for relief, the Petitioner argued that: (1) trial counsel was ineffective for failing to properly investigate the facts of the case and to adequately meet with the Petitioner; (2) the plea was "unlawfully induced"; (3) she was not properly advised of the terms and conditions of her plea; (4) her conviction was based upon an unlawfully obtained or coerced confession; and (5) her conviction was based upon a violation of her right against self-incrimination.[3] A hearing was held on October 28, 2009, and the proof at the hearing centered around the allegations of ineffective assistance and voluntariness of her plea.[4]

Trial counsel was the first to testify. He testified that he obtained and reviewed the Petitioner's file immediately after he was appointed. In the file, trial counsel discovered the Petitioner's statements that she had made to authorities, alerting trial counsel that the Petitioner had already "talked to the cops." During his representation of the Petitioner, the

---

[2] There is some discrepancy about when the petition was filed and whether the petition was timely. The copy in the record shows a file-stamped date of March 6, 2008. After the State alleged that the petition was not timely filed, the Petitioner answered, stating the petition was sent by fax and received by the clerk's office on February 15, 2008. The Petitioner attached a copy of the petition to this response reflecting a file-stamped date of February 19, 2008. At the post-conviction hearing, the State withdrew its objection to the timeliness of the petition and, on appeal, the State avers that timeliness is not an issue.

[3] Counsel was appointed for the Petitioner, but no amended petition was filed.

[4] At the outset of the hearing, post-conviction counsel waived ground three, and the post-conviction court determined that grounds four and five were not proper in a post-conviction proceeding.

Petitioner continued, against trial counsel's advice, to speak with the lead investigator in the case.

Trial counsel then spent a lot of time getting more discovery and talking with the investigators, detectives, and the other lawyers involved in the case. Trial counsel stated that he spent a lot of time on the telephone speaking with the Petitioner's mother and sister. According to trial counsel, most of the time when he spoke with the Petitioner "she was out of it" and "not really interested in a lot." Trial counsel billed a total of six point five hours for representing the Petitioner in court and 209 out-of-court hours.

Trial counsel said that he discussed the case with the Petitioner and the possibility of going to trial. Initially, he had hoped to be able to suppress the Petitioner's statements. However, after being unsuccessful at the motion to suppress hearing, trial counsel talked "at length" with the Petitioner about other possible defense strategies, including "other things that actually killed [the victim] rather than the blunt head trauma." He also conversed with the Petitioner about her right to testify on her own behalf at trial. In the end, trial counsel did not like his "chances" if they proceeded to trial.

Trial counsel confirmed that he explained the penalties associated with a jury conviction for first degree murder and, additionally, the sentencing exposure the Petitioner faced on the other charges and the possibility of consecutive sentencing. He then reviewed the State's offer of twenty years at 100% with the Petitioner. Trial counsel told the Petitioner it was her decision whether to accept the offer and explained her chances at trial. In fact, trial counsel recorded his discussion of the plea agreement with the Petitioner. When asked if he believed a plea to be in the Petitioner's best interest, trial counsel responded affirmatively.

On cross-examination, trial counsel testified that, while the Petitioner was sometimes "real groggy," he did not have any concern for her "cognizant ability" to understand what was going on. However, he acknowledged that the Petitioner did fail a drug test while in jail. Trial counsel stated that he met with the Petitioner approximately five or six times in jail and additionally at court appearances.

Trial counsel said that he was provided with the discovery for the other co-defendants and reviewed those materials. He elaborated that he read those statements to the Petitioner. Trial counsel confirmed that he never provided the Petitioner with a physical copy of the discovery until after she entered her guilty plea.

Trial counsel was then questioned about whether he had interviewed all of the State's witnesses that were provided in the State's discovery response. While trial counsel was

confident he interviewed most of the witnesses on the list, he admitted that he had not interviewed them all.

The Petitioner's mother testified that she spoke with trial counsel "a lot." She tried to explain to him that the Petitioner "was in fear for her life from her half-sister [Stephanie Phillips] . . . ." The substance of their conversations centered around the plea offers and the Petitioner's circumstances while incarcerated. Trial counsel never discussed the evidence with her.

According to the Petitioner's mother, while standing on the courthouse steps, trial counsel informed her that the State's final offer was twenty years; he elaborated, "let [the Petitioner] build five years and he said, then file for appeal, and he would state that he did not represent her to the best of his ability." The Petitioner's stepfather testified to the same statement made by trial counsel on the courthouse steps.

The twenty-eight-year-old Petitioner then testified on her own behalf. She stated that she was not satisfied with trial counsel's representation. When asked about the number of meetings with trial counsel, she agreed that she met with him about three or four times in the jail, but she stated that these meetings lasted less than thirty minutes. According to the Petitioner, the substance of their conversations concerned the State's plea offers and "what [trial counsel] thought [she] should do." She could not remember whether trial counsel ever reviewed discovery with her and did not recall most of the discovery when it was shown to her. She did remember seeing the co-defendants' statements, and she believed the Incident Report looked familiar. Irrespective of her memory of the documents, the Petitioner testified that she never received a copy of any discovery from trial counsel prior to her plea.

She admitted to doing drugs while incarcerated, thus being unable to recall the details of most conversations with trial counsel. The Petitioner testified that she was scared of her half-sister because the Petitioner had given a statement about the crime to the authorities and feared her half-sister would seek retribution.

According to the Petitioner, trial counsel never asked to see any person in particular in order to interview them for trial, never inquired if she wanted to subpoena any witnesses in her defense, and never discussed the testimony of the State's witnesses with her. The post-conviction court then questioned, "Did you have anybody that you would have wanted to subpoena?" The Petitioner replied, "No, not really. I was just—I guess I was just hoping for a miracle, for the truth to come out, you know."

When asked if she talked with trial counsel about the trial process or the issues to be brought out at trial, the Petitioner stated that the only thing trial counsel said to her was that

it was in her best interest to take the twenty-year plea offer. According to the Petitioner, trial counsel never explained to her the elements of the crimes charged or what the State's proof would have been at trial to possibly establish those elements. The Petitioner said that trial counsel told her that, if she proceeded to trial, she "would probably get life."

The Petitioner did remember the motion to suppress hearing regarding her statements she made to the police. However, they did not discuss an interlocutory appeal or reserving any issues for a direct appeal once the motion was denied.

When the Petitioner was asked what relief she was seeking by filing this petition, she stated, "I just want the truth to come out. . . . I know that I wrote the statements, and the reason I kept going to [the lead investigator] was because I thought, you know, that I was going to get help and that he would help the truth come out." She further elaborated, "I feel I did not get a good deal."

On cross-examination, the Petitioner testified that she gave one statement to the authorities in writing, which statement she later added to. The Petitioner relayed that she made the statements because she "figured it would help [her] out" due to the fact that she did not "touch the man."

She said that she understood that, if she went to trial on the first degree murder charge, she faced a minimum of fifty-one years in prison. According to the Petitioner, she believed that she entered a "best interest" plea,[5] rather than a plea acknowledging her guilt. The Petitioner testified that, although she understood she was receiving a sentence of twenty years at the plea hearing, she was not paying a lot of attention to the questions because "there was a lot of crying and stuff going on behind [her]" in the courtroom.

After hearing the evidence presented, the post-conviction court denied relief. This appeal followed.

## Analysis

On appeal, the Petitioner argues that the post-conviction court erred in denying her relief because her guilty pleas were constitutionally infirm due to the ineffective assistance of counsel. Specifically, she contends that, "after [the post-conviction court] found that her

---

[5] This type of plea is named after North Carolina v. Alford, 400 U.S. 25 (1970), in which the United States Supreme Court discussed the right of an accused to plead guilty in his or her best interest while professing actual innocence.

trial attorney did not interview all the witness the [S]tate intended to call at trial, met with the [Petitioner] only a few times, and did not provide discovery to his client[,]" the post-conviction court should have granted her petition.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. To demonstrate prejudice, a defendant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be

judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. Hill v. Lockhart, 474 U.S. at 56 (citing Alford, 400 U.S. at 31).

When a guilty plea is entered, a defendant waives certain constitutional rights, including the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront witnesses. Boykin v. Alabama, 395 U.S. 238, 243 (1969). "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." Id. at 242. Thus, in order to pass constitutional muster, a guilty plea must be voluntarily, understandingly, and intelligently entered. See id. at 243 n.5; Brady v. United States, 397 U.S. 742, 747 n.4 (1970). To ensure that a guilty plea is so entered, a trial court must "canvass[] the matter with the accused to make sure he [or she] has a full understanding of what the plea connotes and of its consequence[s]." Boykin, 395 U.S. at 244. The waiver of constitutional rights will not be presumed from a silent record. Id. at 243.

In State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), the Tennessee Supreme Court set forth the procedure for trial courts to follow in Tennessee when accepting guilty pleas. Id. at 341. Prior to accepting a guilty plea, the trial court must address the defendant personally in open court, inform the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. See id.; Tenn. R. Crim. P. 11. A verbatim record of the guilty plea proceedings must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into the defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." Mackey, 553 S.W.2d at 341.

However, a trial court's failure to follow the procedure mandated by <u>Mackey</u> does not necessarily entitle the defendant to seek post-conviction relief. <u>See</u> <u>State v. Prince</u>, 781 S.W.2d 846, 853 (Tenn. 1989). Only if the violation of the advice litany required by <u>Mackey</u> or Tennessee Rule of Criminal Procedure 11 is linked to a specified constitutional right is the challenge to the plea cognizable in post-conviction proceedings. <u>See</u> <u>Bryan v. State</u>, 848 S.W.2d 72, 75 (Tenn. Crim. App. 1992). "Whether the additional requirements of <u>Mackey</u> were met is not a constitutional issue and cannot be asserted collaterally." <u>Johnson v. State</u>, 834 S.W.2d 922, 925 (Tenn. 1992).

Regarding the Petitioner's allegations that trial counsel failed to adequately meet with the Petitioner in preparation for trial, failed to provide her with discovery, and failed to interview potential witnesses, the post-conviction court concluded in its written order that the Petitioner was not denied the effective assistance of counsel:

> Specifically the [c]ourt held that the trial attorney did not interview all of the State's witnesses, but this did not prejudice the [Petitioner]. The [c]ourt held that the [Petitioner] did not have any other witnesses she could have called on her behalf. The [c]ourt further held that the [Petitioner] had given incriminating statements to officers regarding her involvement in the case. The [c]ourt also held that the trial attorney had spent an inordinate amount of hours working on the case, that he and the [Petitioner] had discussed the likelihood of conviction and acquittal at trial, and that they had discussed the maximum amount of punishment and the plea offer.

The Petitioner's assertion that trial counsel was constitutionally ineffective for failing to interview all of the State's witnesses before trial is unsupported. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." <u>Black v. State</u>, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The Petitioner did not present the testimony of any of these witnesses at her post-conviction hearing. Moreover, the post-conviction court asked, "Did you have anybody that you would have wanted to subpoena?" and she replied, "No, not really. I was just—I guess I was just hoping for a miracle, for the truth to come out, you know."

The Petitioner also contends that trial counsel was ineffective for failing to meet with her often enough in preparation for trial and for failing to provide her with a copy of discovery materials. Trial counsel testified that he reviewed all discovery materials with the Petitioner and that they met on multiple occasions. He billed a total of six point five (6 ½) hours for representing the Petitioner in court and 209 out-of-court hours. According to trial counsel, most of the time he spoke to the Petitioner she was "real groggy" and, therefore, he

spoke with the Petitioner's mother quite frequently. The Petitioner, who admitted to drug use while in jail, testified that she recalled several of the documents.

Trial Counsel also said that he reviewed the facts of the case with the Petitioner, possible defense strategies, her right to testify on her own behalf, the penalties she was facing, and the possibility of proceeding to trial. Trial counsel believed that the Petitioner's chances at trial were not favorable because she had made several statements to the authorities. At the guilty plea hearing, the Petitioner acknowledged that it was in her best interest to plead guilty. Trial counsel testified that he did not exert any undue pressure on the Petitioner. The record reflects the Petitioner knew and understood the options available to her prior to the entry of her guilty plea including the right not to plead guilty and demand a jury trial, and she freely made an informed decision of that course which was most palatable to her at the time.

The guilty plea transcript reveals that the trial judge carefully reviewed the rights that the Petitioner was waiving and confirms that the Petitioner responded appropriately to questions. At the guilty plea hearing, the Petitioner confirmed that she was freely and voluntarily waiving her right to a jury trial. The Petitioner said that she was neither under the influence of any substance nor suffered from any mental defects. The Petitioner was also expressly asked if she was being pressured to plead or offered anything in exchange for her plea, to which she answered no. Furthermore, the Petitioner stated that he was satisfied with trial counsel's representation. The trial court outlined the terms of the plea agreement, and the Petitioner acknowledged her signature on the agreement. Moreover, the Petitioner acknowledged the recitation of facts supporting her convictions and stated that she was pleading guilty because she was in fact guilty.

Again, the evidence supports the findings of the post-conviction court. In consequence, the Petitioner has failed to establish that her guilty pleas were not knowing and voluntary. She has failed to show that she was denied the effective assistance of counsel.

**Conclusion**

Based upon the foregoing, we conclude that the post-conviction court did not err by denying post-conviction relief. Accordingly, we affirm the judgment of the Cocke County Circuit Court.

_____
DAVID H. WELLES, JUDGE